IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| NEW BREED LOGISTICS, | ) ) | **C O M P L A I N T** |
| Defendant. | ) ) ) | JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Tiffany Pete, Capricious Pearson, Jacqueline Hines, and other female employees who were adversely affected by such practices. As alleged with greater particularity in paragraphs 8-12 below, the Equal Employment Opportunity Commission alleges that New Breed Logistics subjected these women to unlawful sexual harassment, and then retaliated against them for complaining about the harassment by terminating their employment. The Commission also alleges that New Breed Logistics retaliated against Christopher Partee by terminating his employment because he opposed the unlawful sexual harassment.

## JURISDICTION AND VENUE

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to Sections 706(f)(1) and

(3) of Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000-5(f)(1) and (3).

4. At all relevant times, Defendant New Breed Logistics ("Defendant"), has continuously been a foreign corporation doing business as New Breed Logistics, in the State of Tennessee and the City of Memphis, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h). Defendant is a privately held, third-party logistics services provider that assists companies in designing and operating efficient supply chains.

## STATEMENT OF CLAIMS

6. More than thirty (30) days prior to the institution of this lawsuit, Tiffany Pete filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least approximately April 2008, Defendant has engaged in unlawful employment practices at its facility located at 5015 Citation Drive in Memphis, Tennessee, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §2000e-2(a) and 3(a).

8. The unlawful employment practices involved subjecting Ms. Tiffany Pete to unwelcome sexual harassment because of her sex, female, and retaliating against her by terminating her employment.

   a. Ms. Pete, an employee of Select Staffing, a temporary agency, was placed on a work assignment at Defendant's Memphis facility on April 1, 2008.

   b. She worked in the Shipping Department for approximately one week and was then transferred to the Receiving Department.

   c. Mr. James Calhoun was the Receiving Department Supervisor, and he supervised Ms. Pete.

   d. A day or two after arriving in the Receiving Department, Mr. Calhoun began sexually harassing Ms. Pete.

   e. Mr. Calhoun talked about Ms. Pete's "big butt" and how good it looked in her jeans. He licked his lips and said that he wanted "to eat her pussy." He told her daily that he "wanted to fuck her." He frequently made sexually explicit comments and inappropriate remarks about her clothes and her body shape.

   f. The unwelcome sexual harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Ms. Pete's employment and to create a sexually hostile work environment.

   g. Ms. Pete was warned by other female employees that if she complained about the harassment she would be fired.

   h. On May 13, 2008, Ms. Pete placed an anonymous phone call to Defendant's 1-800 Hotline and complained that Calhoun was sexual harassing the female

employees.

 i. Ms. Pete called the Hotline a second time to follow up her initial complaint, at which time she revealed her identity.

 j. Defendant did not investigate Ms. Pete's complaint of sexual harassment, nor did it attempt to interview female employees with whom Mr. Calhoun worked in the Receiving Department.

 k. After Ms. Pete called the Hotline, Defendant transferred her from the Receiving Department into the Returns Department under the supervision of Elizabeth Malone.

 l. On May 17, 2008, Ms. Pete reported to work as usual. She completed the full day, and when she returned home, she had a phone message from Select Staffing that her assignment at Defendant's facility had ended.

 m. Ms. Pete never received a separation notice or an explanation for her termination.

 n. Also on May 17, 2008, after her termination, Ms. Pete complained to Select Staffing about the sexual harassment she experienced while working at Defendant's facility. Ms. Pete provided a written statement to Select Staffing describing the sexual harassment she endured while working under Mr. Calhoun. Select Staffing provided a copy of the statement to Defendant.

 o. Subsequently, Defendant conducted its own investigation and fired Mr. Calhoun around May 30, 2008.

 p. Tiffany Pete filed Charge No. 490-2008-02266 with the Commission on June 13, 2008, alleging discrimination based on her sex and retaliation.

  q.  The effect of the practices complained of in paragraph 8 (a)-(n) has been to deprive Ms. Pete of equal employment opportunities and to otherwise adversely affect her employment because of her sex, female, and to retaliate against her for complaining about the unlawful employment practices.

  r.  Defendant is strictly liable for the sexual harassment of Ms. Pete because of Mr. Calhoun's status as Supervisor at Defendant's facility.

9.  The unlawful employment practices involved subjecting Ms. Capricious Pearson to unwelcome sexual harassment because of her sex, female, and retaliating against her by terminating her employment.

  a.  Ms. Pearson, also an employee of Select Staffing, was placed on a work assignment at Defendant's Memphis facility on April 8, 2008.

  b.  Ms. Pearson was placed in the Receiving Department under the supervision of Mr. Calhoun.

  c.  On her first day Mr. Calhoun told her she owed him because he got her hired. She also heard on that day that Mr. Calhoun fired people who did not give him what he wanted.

  d.  Within her first week, Calhoun said to her and another young lady, "I want to fuck, I want to fuck."

  e.  As the days progressed, his dirty talking got more explicit. His comments included:

    i.  "I'm gone fuck you good."

    ii.  One day Ms. Pearson was feeling sick so he grabbed his crouch and said, "I got something to knock that out."

    iii.  "Can I see you tonight?"

5

      iv.    "Oh, when we gonna hook up?"

      v.    "Call me. If I'm with my wife my response will be, 'what's wrong – what's the problem.'"

    f.    Mr. Calhoun also touched Ms. Pearson inappropriately by rubbing her thigh and her butt, and blowing air down her neck.

    g.    The unwelcome sexual harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Ms. Pearson's employment and to create a sexually hostile work environment.

    h.    Ms. Pearson complained directly to Mr. Calhoun and asked him to stop the behavior.

    i.    He responded by telling Ms. Pearson, "If anyone goes to [the HR Director] on me, they will be fired."

    j.    On her last day in the Receiving Department, Mr. Calhoun approached Ms. Pearson and said, "This my pussy and you been a bad girl." Pearson asked what he was talking about and he replied, "If I can't get the pussy nobody can." Later that evening she was moved to a different department, the Returns Department.

    k.    On her last day of work, Ms. Pearson observed Mr. Calhoun and her new supervisor, Elizabeth Malone, having a very long conversation. By the end of that day, her job was terminated.

    l.    Pearson was terminated on May 17, 2008, the same date as Ms. Pete. She submitted a written complaint of sexual harassment to Select Staffing on May 19, 2008. Select Staffing provided a copy of the statement to Defendant.

    m.    The effect of the practices complained of in paragraph 9 (a)-(l) has been to deprive Ms. Pearson of equal employment opportunities and to otherwise adversely affect

her employment because of her sex, female, and to retaliate against her for complaining about the unlawful employment practices.

    n.    Defendant is strictly liable for the sexual harassment of Ms. Pearson because of Mr. Calhoun's status as Supervisor at Defendant's facility.

10.    The unlawful employment practices involved subjecting Ms. Jacqueline Hines to unwelcome sexual harassment because of her sex, female, and retaliating against her by terminating her employment.

    a.    Ms. Hines, another female employee, also worked under the supervision of Mr. Calhoun in the Receiving Department at Defendant's Memphis facility.

    b.    On a daily basis, Mr. Calhoun told Ms. Hines how he would "love to eat her pussy," "fuck her," "give her money," and he wanted her to "suck his dick."

    c.    The unwelcome sexual harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Ms. Hines' employment and to create a sexually hostile work environment.

    d.    Ms. Hines complained directly to Mr. Calhoun and asked him to stop the behavior.

    e.    Within a week of her complaint, Ms. Hines was terminated from her employment.

    f.    The effect of the practices complained of in paragraph 10 (a)-(e) has been to deprive Ms. Hines of equal employment opportunities and to otherwise adversely affect her employment because of her sex, female, and to retaliate against her for complaining about the unlawful employment practices.

    g.    Defendant is strictly liable for the sexual harassment of Ms. Hines because

of Mr. Calhoun's status as Supervisor at Defendant's facility.

11. The unlawful employment practices involved subjecting a class of female employees to unwelcome sexual harassment because of their sex, female.

12. The unlawful employment practices involved retaliating against a male employee, Mr. Christopher Partee, because he opposed unlawful employment practices.

    a. Mr. Partee, another former employee and witness, worked at Defendant's facility from approximately October 2007 through May 2008.

    b. He was placed at the company through a temporary agency, and was later hired as a permanent employer by Defendant.

    c. He worked as a forklift driver in the Receiving Department, and he was supervised by James Calhoun.

    d. Mr. Partee heard Mr. Calhoun make sexual comments to the female employees.

    e. Mr. Partee observed that if Mr. Calhoun did not like an employee, he had that employee transferred to another department.

    f. In an interview conducted by Carissa Woods, Defendant's Regional Human Resources Manager, on May 22, 2008, Mr. Partee testified that he had witnessed Mr. Calhoun sexually harass female employees.

    g. Shortly after corroborating the sexual harassment complaints, Mr. Calhoun erroneously reported to the Human Resources Department that Mr. Partee stole company time.

    h. The day after Mr. Calhoun's allegation, and without an investigation, Mr. Partee was fired.

    i.  The effect of the practices complained of in paragraph 10 (a)-(h) has been to deprive Mr. Partee of equal employment opportunities and to otherwise adversely affect his employment because of his protected activity.

 13. The unlawful employment practices complained of in paragraphs 8-12 above were intentional.

 14. The unlawful employment practices complained of in paragraphs 8-12 above were done with malice or reckless indifference to the federally protected rights of Ms. Pete, Ms. Pearson, Ms. Hines and Mr. Partee.

## PRAYER FOR RELIEF

 **THEREFORE**, the Commission respectfully prays that this Court:

 A. Grant a permanent injunction enjoining Defendant and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in harassment and any other employment practice which discriminates on the basis of sex, female.

 B. Order Defendant to provide mandatory training regarding Title VII and its prohibition against sexual harassment to all management and non-management officials in its various facilities.

 C. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for women, and eradicate the effects of its past and present unlawful employment practices.

 D. Order Defendant Employer to make whole Tiffany Pete, Capricious Pearson, Jacqueline Hines, and Christopher Partee by providing appropriate back pay with prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the

effects of its unlawful employment practices.

    E.    Order Defendant to make whole Tiffany Pete, Capricious Pearson, Jacqueline Hines, and Christopher Partee by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of in paragraphs 8-12 above in amounts to be determined at trial.

    F.    Order Defendant to make whole Tiffany Pete, Capricious Pearson, Jacqueline Hines and Christopher Partee by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, and humiliation, in amounts to be determined at trial.

    G.    Order Defendant to pay punitive damages to Tiffany Pete, Capricious Pearson, Jacqueline Hines and Christopher Partee for its malicious and/or reckless conduct, in amounts to be determined at trial.

    H.    Grant such further relief as the Court deems necessary and proper in the public interest.

    I.    Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

s/ Faye A. Williams by ACC with permission
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

s/ Deidre Smith by ACC with permission
DEIDRE SMITH
Supervisory Trial Attorney
TN Bar No. 018499
deidre.smith@eeoc.gov

s/Anica C. Conner
ANICA C. CONNER
Trial Attorney
TN Bar No. 025325
anica.conner@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1407 Union Ave., Suite 901
Memphis, TN  38104
(901) 544-0087