## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-2696-STA-tmp |
| | ) | |
| NEW BREED LOGISTICS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING NEW BREED'S MOTION FOR A NEW TRIAL
## ORDER DENYING IN PART AND GRANTING IN PART NEW BREED'S MOTION TO AMEND JUDGMENT
## ORDER DENYING IN PART AND GRANTING IN PART NEW BREED'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Before the Court are Defendant New Breed Logistics' ("New Breed") Motion for Judgment as a Matter of Law (D.E. # 236) and Motion for New Trial or to Amend Judgment (D.E. # 239) filed June 6, 2013. Plaintiff Equal Employment Opportunity Commission ("the EEOC") filed Responses (D.E. # 249 and 248, respectively) on July 1, 2013. New Breed filed Replies (D.E. # 254 and 256, respectively) on July 27, 2013. Due to recent decisions of the United States Supreme Court, the Court granted leave for the parties to submit additional briefing in an Order (D.E. # 253) dated July 10, 2013. New Breed submitted this additional briefing in Memoranda in Support (D.E. # 257 and 258) on July 25, 2013. The EEOC submitted responsive briefing in a Memorandum in Support (D.E. # 258) filed August 12, 2013. For the reasons given herein, the Court **DENIES** New Breed's Motion for a New Trial, **GRANTS IN**

**PART AND DENIES IN PART** New Breed's Motion to Amend Judgment, and **GRANTS IN PART AND DENIES IN PART** New Breed's Motion for Judgment as a Matter of Law.

## BACKGROUND

New Breed is a supply-chain logistics company with warehouses located, among other places, in Memphis, Tennessee ("the Avaya Facility") and Olive Branch, Mississippi ("the Nail Road Facility"). The EEOC sued New Breed in this Court, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* arising from alleged sexual harassment by James Calhoun ("Calhoun") against Jaquelyn Hines ("Hines"), Capricius Pearson ("Pearson"), and Tiffany Pete ("Pete"). The EEOC also alleged that New Breed violated Title VII's anti-retaliation provisions by discharging Hines, Pearson, Pete, and Christopher Partee ("Partee") (collectively, "the Claimants") at the Avaya Facility, then further retaliated against Hines by discharging her at the Nail Road Facility.

This matter came before the Court in a jury trial held from April 30, 2013 to May 7, 2013. The jury heard testimony from Calhoun, Hines, Pearson, Pete, and Partee. The jury also heard testimony from New Breed's corporate counsel, Richard Valitutto ("Valitutto"); New Breed Human Resources Manager Luann Hearn ("Hearn"); former New Breed Supervisor Elizabeth Malone ("Malone"); Avaya Facility Manager Sheldon Culp ("Culp"); New Breed Human Resources Director Carissa Woods ("Woods"); and EEOC Paralegal Specialist Nancy Kincaide ("Kincaide").

Before the Court submitted the case to the jury, New Breed moved the Court for judgment as a matter of law pursuant to Rule 50. The Court took the motion under advisement until the jury returned a verdict. The jury returned a verdict against New Breed on the EEOC's

claims of sexual harassment and retaliation.  New Breed now renews its Rule 50 motion, as well as moving the Court to amend the judgment of the court and for a new trial.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(a) provides that a district court may grant a motion for a new trial, in an action involving a trial by jury, "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."[1]  The Sixth Circuit construes Rule 59(a) to allow a district court to grant a motion for new trial only "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."[2]

A motion for a new trial on the grounds that the verdict was against the weight of evidence requires the Court to compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence.[3]  The court should deny the motion, and new trial is improper, if a reasonable juror could have reached the same verdict.[4]  "Courts are not free to reweigh the evidence and set aside the jury verdict

---

[1] Fed. R. Civ. P. 59(a).

[22] *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir 2006) (citing *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)) (internal quotations omitted.).

[3] *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir. 1993) (citing *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992)).

[444] *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (citing *Holmes*, 78 F.3d at 1048).  *See also Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982) ("Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.")

merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."[5]

Rule 59(e) provides that parties may file a motion to alter or amend a judgment within ten days of entry of that judgment.[6]  A court may grant a motion under Rule 59(e) for one of four reasons: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) to prevent manifest injustice.[7]

In reviewing a motion under Rule 50 for judgment as a matter of law, the court uses the same standard applicable to a motion under Rule 56 for summary judgment.  The court "may not make credibility determinations or weigh the evidence[,]"[8] but instead must view the evidence in the light most favorable to the nonmoving party.[9]  When the movant supports their motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[10]  It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts."[11]  These facts must constitute more than a scintilla of evidence, and must rise to the level that a reasonable juror could find by a preponderance of

---

[5] *Barnes*, 201 F.3d at 821 (citing *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir. 1967)) (internal quotation omitted).

[6] Fed. R. Civ. P. 59(e).

[7] *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

[8] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Celotex*, 477 U.S. at 324.

[11] *Matsushita*, 475 U.S. at 586.

the evidence the nonmoving party is entitled to a verdict.[12]  To determine whether it should grant

a motion for judgment as a matter of law, the court should ask "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."[13]

A court must enter judgment as a matter of law "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, on which

that party will bear the burden of proof at trial."[14]  The Sixth Circuit interprets this to mean that

"the nonmoving party . . . 'put up or shut up' [on] the critical issues of his asserted causes of

action."[15]

### ANALYSIS

Because New Breed's Motions for a New Trial, to Alter or Amend the Judgment, and for

Judgment as a Matter of Law state substantially the same grounds, in the interest of efficiency

the Court will address these motions together issue by issue.

### Jury Instructions

New Breed requests new trial on the basis of several jury instructions which it claims

were flawed, preventing New Breed from receiving a fair trial.  The standard upon which the

Court reviews New Breed's claims of prejudicial jury instructions depends on whether New

Breed waived objections to these instructions.  If New Breed waived its objections, the Court

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[13] *Id.* at 251-52.

[14] *Celotex*, 477 U.S. at 322.

[15] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

uses a discretionary "plain error" review.[16]  In the Sixth Circuit, to preserve objections to jury instructions, a party must not only object prior to the court's charge to the jury, it must renew those objections after the jury receives its instructions.[17]  The sole exception to this rule is "only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission."[18]

## Punitive Damages

New Breed assigns as error the failure of the jury instruction titled "Evidence Required for Punitive Damages" to contain language regarding affirmative defenses to liability for punitive damages.  New Breed contends it did not waive its objections to this charge.  First, New Breed directs the Court's attention to its own statement during the charge conference held on May 6, 2013 that "assuming that you're going to maintain that the other version, other than the one I adopt, that you're preserving your rights to still object to that [instruction]."[19]  New Breed maintains it objected by submitting its own jury instructions and by providing the court with a chart highlighting the differences between New Breed's and EEOC's proposed jury instructions. Further, New Breed moved for judgment as a matter of law on the issue of punitive damages, which it argues put the Court on notice that it objected to the Court's adopted jury instruction on this issue.

---

[16] *Scott v. Miller*, 361 F. App'x 650, 652-53 (6th Cir. 2010) (citing *Puckett v. United States* (2009); *Alsobrook v. UPS Ground Freight*, 352 F. App'x 1, 1-3 (6th Cir. 2009).  *See* Fed. R. Civ. P. 51(d)(2).

[17] *Scott* 361 F. App'x at 653.

[18] *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir. 1992).

[19] 5/6/13 Charge Conf. 14:7-12, D.E. # 238-14.

Although New Breed moved the Court for judgment as a matter of law on the matter of punitive damages, its basis for this motion was that the EEOC has not presented sufficient evidence that New Breed had acted with malice or reckless indifference.[20]  This motion did not put the Court on notice New Breed objected in any way, shape, or form to the fact the jury instructions did not contain language about affirmative defenses to punitive damages.  Therefore, the Court cannot consider this a basis for preserving objection under Rule 51.

The submission of alternate jury instructions does not suffice to put the Court on notice that a party maintains objections when that party fails to object after the Court charges the jury.[21]  Further, when specifically asked if New Breed had any objections to the instructions as read to the jury, New Breed responded "No, Your Honor."[22]

The Court also notes that during the Court's charge conference on May 8, 2013, New Breed specifically acquiesced to the challenged jury instruction:

> "THE COURT:        All right. Punitive damages.  Let's see, New Breed Number 29.
>
> MR. BRITT:   Your Honor, I think the defendant can accept the EEOC's 32, 33 and 34.
> We may have one slight modification on 34."[23]

New Breed's instruction 33, entitled "Evidence Required for Punitive Damages" mirrors the instruction "Evidence Required for Punitive Damages" as read to the jury.[24]

---

[20] Motions Hearing 10:2-13:3, D.E. # 238-21.

[21] *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1236 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

[22] Trial Trans. 138:2, D.E. # 238-23.

[23] 5/8/13 Charge Conf. 8:22-9:1, D.E. # 238-22.

[24] EEOC Proposed Jury Inst. at 40, D.E. # 196; Jury Inst. at 46, D.E. # 225

Based on the foregoing, the Court finds New Breed did not properly preserve objection to the jury instruction "Evidence Required for Punitive Damages".  Therefore, the Court must proceed under the discretionary "plain error" review mandated by Fed. R. Civ. P. 51(d)(2).

"A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."  Under plain error review, a court must find four factors:

> First, there must be an error or defect . . . that has not been intentionally relinquished or abandoned, *i.e.* affirmatively waived, by the appellant.  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.  Third, the error must have affected the appelllant's substantial rights.  Fourth and finally, if the above three prongs are satisfied . . . discretion . . . ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[25]

The Court determines New Breed is not entitled to a new trial based on the "Evidence Required for Punitive Damages" jury instruction.  New Breed indicated in plain terms that it agreed with this instruction at the charge conference, so intentionally relinquished any objection to putative error in the instruction as given.

## Sexual Harassment

New Breed also assigns as error various instructions the Court gave regarding sexual harassment.  New Breed first argues the Court's instructions held New Breed strictly liable for James Calhoun's harassing behavior.  New Breed then argues the Court failed to instruct the jury on the necessary causation standard to remove the *Faragher/Ellerth* defenses from the jury's consideration.

---

[25] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal citations and quotations omitted).

<u>Employer Liability Instruction</u>

New Breed argues the instruction titled "Employer Liability" unfairly prejudiced it at trial, as the instruction allowed the jury to hold New Breed strictly liable for Calhoun's behavior. Specifically, New Breed objects to the language "[t]he appropriate standard in determining employer liability where a supervisor is involved is that it is not enough for an employer to take corrective action; employers have an affirmative duty to prevent discrimination."[26]

The Court again turns to the record to determine if New Breed properly preserved this objection.  During the charge conferences held on May 6 and 7, 2013, the parties discussed EEOC proposed instruction 14, which contains the language New Breed now maintains is inaccurate and prejudicial.[27]  At the May 6, 2013 charge conference, the Court asked New Breed "Do you have any problem with the way they worded 14 as far as employer liability?"[28]  In response, New Breed discussed language regarding whether Calhoun was a supervisor or not. New Breed also stated it accepted the first paragraph of this instruction, containing the language to which they now object, subject to any Rule 50 motion.[29]  At that time, the Court had pending before it New Breed's Rule 50 motion on the subject of whether Calhoun was a supervisor, a point New Breed later conceded.[30]

---

[26] Jury Instr. at 27.

[27] EEOC Proposed Jury Inst. at 18; *cf* Jury Instructions at 18.

[28] 5/6/13 Charge Conf. 45:12-24, D.E. # 238-15.

[29] *Id.* 45:35-46:1.

[30] 5/7/13 Charge Conf.. 114:17-21, D.E. # 238-20.

At the May 7, 2013 charge conference, New Breed again objected to language regarding whether Calhoun was a supervisor, arguing this language was no longer necessary.[31]  What New Breed notably did not discuss is the language to which it now objects.  When the Court asked if the parties had further issues with the instruction, New Breed remained silent.[32]  Then, as previously noted, when the Court asked New Breed whether it had any objections to the jury instructions as read, New Breed informed the Court it had no objections.  Therefore, the Court finds that New Breed did not preserve an objection to this instruction under Rule 51.

Turning to whether this error presents plain error under Rule 51(d)(1), the Court notes that, unlike the language regarding punitive damages, New Breed did not acquiesce to the language contained in the jury instruction.  However, the Court determines any error in the instruction was not so clear and obvious that it would not be subject to reasonable dispute.  The court notes the instruction, as given, was a correct if potentially incomplete statement of law.  "After *Faragher* and *Burlington Industries,* however, it is no longer enough for an employer to take corrective action; employers now have an *affirmative duty* to prevent sexual harassment by supervisors."[33]  The basis of New Breed's objection is that the instruction did not include language informing the jury that it could only hold New Breed to a duty of reasonable care.[34]  However, a jury instruction inserted at New Breed's suggestion discussed whether New Breed took reasonable care to prevent Calhoun's harassment.[35]  The Court determines that it is not clear

---

[31] *Id.* 116:15-118:4.

[32] *Id.* 118:5-7.

[33] *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999).

[34] *See id.* ("[A]n employer can escape liability only if it took reasonable care to prevent and correct any sexually harassing behavior").

[35] Jury Instr. at 30.

and obvious that the issue of whether New Breed took reasonable care to prevent harassment was not before the jury based on the instructions as given.  Thus, the Court holds there was no clear error in the jury instructions as given on this point.

Causation Standard

New Breed's next assignment of error deals with the jury instruction "Effect if Tangible Employment Action Is Taken by a Supervisor"  New Breed argues the instruction as given did not adequately inform the jury there must be a causal connection between Calhoun's harassment and a tangible employment action.  The Court finds this instruction was not erroneous, as it clearly explained the jury must find a causal connection between Calhoun's alleged harassment and any tangible employment action against a particular employee.[36]

The Court notes New Breed indicated its approval of the language of this jury instruction as read to the jury.

> THE COURT: And then 17: "If Calhoun's harassing behavior culminated into a tangible employment action, the employer is vicariously liable.  That is, the EEOC must establish a either causal connection" – and I'll let you both be heard on that -- "or a connection between Calhoun's alleged harassment and the tangible employment action against a particular claimant."

> MR. BRITT: Your Honor, we don't have any problem with that. I think that's a good approach.  We do believe that "causal connection" needs to be in there because I think that is the term that the courts used regularly to establish the connection between the harassment and the tangible employment action.[37]

Since New Breed acquiesced to this jury instruction, and it included language New Breed itself thought appropriate, the Court does not find it appropriate to review this language under either Rule 51 standard.

---

[36] Jury Inst. at 51.

[37] 5/7/13 Charge Conference 124:1-13, D.E. # 238-20.

New Breed also assigns error in the next instruction titled "Effect If No Tangible Employment Action Take."  New Breed maintains that the language of this instruction indicates the *Faragher/Ellerth* defenses would not be available if EEOC showed that the individual claimants suffered any tangible employment action, not one caused by Calhoun's harassment.

Were the Court to look at this instruction in isolation, it might agree.  The language contained in the instruction is that the *Faragher/Ellerth* defense would be available "[i]f you find that no tangible employment action was, in fact taken against Ms. Pete, Ms. Pearson, or Ms. Hines[.]"  Alone, this language seems to indicate any tangible employment action forecloses a *Faragher/Ellerth* defense.  However, the Court does not review jury instructions out of context, nor does it read them to the jury in such piecemeal fashion.  "[T]he critical inquiry is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried."[38]  Taken as a whole, the instructions adequately instructed the jury that there must be a causal connection between the tangible employment action and Calhoun's harassment.  The sentence read immediately prior to the one to which New Breed takes exception clearly states there must be a causal connection between the tangible employment action and Calhoun's harassment.[39]  The Court finds it unreasonable to think a juror would forget the requirement of a causal connection between one sentence and the next.  Therefore, the Court finds the instruction as read to the jury correctly stated the law applicable to the case.

---

[38] *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799, 802 (6th Cir. 1984).

[39] Trial Trans. 117:19-118:18, D.E. # 238-23.

### Prima Facie Case for Harassment

New Breed's next assignment of error is that two jury instructions, "Effect If No Tangible Employment Action Taken" and "Hostile Work Environment"[40] contained incomplete recitations of the prima facie case for hostile work environment discrimination.  The Court finds this argument misguided.  New Breed concedes the jury instruction "Hostile Work Environment" at page 22 correctly states the prima facie case for hostile work environment discrimination. That the court may have omitted certain elements of the prima facie case when discussing other aspects of the case does not render HW22 nugatory.

New Breed also objects to the instruction "Hostile Work Environment Standard".  New Breed argues this instruction omits any reference to and does not describe the subjective component of a hostile work environment claim.  The Court finds this argument unavailing for two reasons.  First, the instruction clearly states "[t]his is both an objective and subjective standard[,]"[41] making the contention the instruction makes no reference to a subjective component erroneous.  Second, the instruction goes on to state that "[h]arassment is hostile if it is unwelcome[.]"[42]  In the instruction "Unwelcomeness," the Court explained "'[u]nwelcome harassment' means conduct that is uninvited, and offensive or unwanted."[43]  This instruction goes on to explain "the harassment must be both objectively and subjectively offensive."[44]

---

[40] There are two instructions titled "Hostile Work Environment," one at page 21 and one at page 22.  For clarity, the Court will refer to them as "HW21" and "HW22." New Breed objects to HW21-the instruction at page 21.

[41] Jury Inst. at 25.

[42] *Id.*

[43] *Id.* at 23.

[44] *Id.*

Finally, after an explanation of the meaning of objectively offensive, the instruction stated "[t]o be subjectively offensive, the aggrieved individual or Claimant must have also found the conduct unwelcome and unwanted."[45]  Whatever flaws may exist in this instruction, New Breed specifically acquiesced to this instruction as given to the jury.[46]

## Retaliation

New Breed's next assignments of error deal with the jury instructions relating to the EEOC's retaliation claims.  New Breed argues the instructions "Retaliation – Elements of Proof" and "Employer's Knowledge" were clearly erroneous because they suggest a complaint to any New Breed supervisor was sufficient to impute knowledge to New Breed.

With respect to the "Retaliation – Elements of Proof" instruction, New Breed made specific objection to the language used, asking the Court to substitute "decision-maker" for the word "Defendant" in the sentence "[t]hat Defendant had knowledge of the claimant's protected activity."  However, the language the Court used in this instruction closely follows the Sixth Circuit's language in laying out the prima facie case for retaliation.[47]  The Court finds no error in instructing the jury according to the elements of the prima facie case for retaliation as articulated by the Sixth Circuit.

---

[45] *Id.*

[46] 5/6/13 Charge Conf.. 32:20-25, D.E. # 238-14.

"THE COURT: And then No. 10, unwelcomeness, what's the defendant's position on that?
…
MR. DeGROFF: That is fine as well, 10."

[47] *Imwale v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) ("[T]he exercise of his civil rights was known to the defendant");  *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997) ("[P]laintiff's exercise of his civil rights was known by the defendant.");

## Employer Knowledge

As to the "Employer Knowledge" instruction, New Breed assigns error in that the instruction allowed the jury to impute knowledge by New Breed for any complaint an employee made to any supervisor, including a harassing supervisor.  During the May 7, 2013 charge conference, New Breed raised an objection to this instruction, stating they thought there was an open question of law regarding whether Calhoun could be included in the group of supervisors from whom the jury could impute knowledge to New Breed.[48]  However, New Breed also conceded the instruction was a correct statement of law.[49]  In light of New Breed's concession the instruction was a correct statement of law, and in light of New Breed's failure to object after the Court read this instruction to the jury, the Court determines New Breed did not properly preserve its objection to this instruction.

In support of its contention this instruction warrants a new trial as clear error, New Breed cites several cases standing for the proposition that a relevant decision-maker must have knowledge of an employee's protected activity in a retaliation suit.[50]  However, the "Employer Knowledge" instruction says nothing about retaliation.  The instruction speaks only to whether an employer has "notice of harassment[.]"[51]  It does not address any element of the prima facie case for retaliation.  It is true that the Court read this instruction immediately after reading the instruction "Retaliation – Elements of Proof" instruction, and doing so was potentially confusing

---

[48] 5/7/2013 Charge Conf. 128:24-129:20, D.E. # 238-20.

[49] *Id.*

[50] *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010); *Mulhall v. Ashcroft*, 287 F.3d 543, 552-54 (6th Cir. 2002); *Fenton v. HiSAN, Inc.* 174 F.3d 827, 832 (6th Cir. 1999); *Bacon v. Honda*, 192 F. App'x 337 (6th Cir. 2006); *Proffitt v. Metro. Gov't of Nashville*, 150 F. App'x 439, 443 (6th Cir. 2005).

[51] Jury Inst. at 34.

as the instruction was irrelevant to EEOC's retaliation claims.  However, the inclusion of an irrelevant legal standard is not the sort of plain error that mandates a new trial.[52]

### Causation

New Breed next assigns error in the instruction "Causal Connection" as read to the jury. New Breed asserts the language "[c]lose timing between the Claimant's protected activity and an adverse action against the Claimant may provide the causal connection needed to make out a prima facie case of retaliation."[53]  New Breed asserts that in the Sixth Circuit, temporal proximity alone is not sufficient to establish causation in a retaliation case.

At the May 7, 2013 charge conference, New Breed specifically acquiesced to the language in the "Causal Connection" instruction to which it now objects.[54]  As a result, the Court finds New Breed did not properly preserve any objection to this instruction.  Moreover, this acquiescence precludes review under plain error.[55]

### Protected Activity

New Breed next assigns error in the court's instruction "[m]aking a complaint to a supervisor is deemed protected activity, even where the supervisor is also the alleged sexual

---

[52] *See, e.g., United States v. Mari*, 47 F.3d 782 (6th Cir. 1995) (inclusion of irrelevant jury instruction is harmless error as a matter of law).

[53] Jury Inst. at 35.

[54] 5/7/2013 Charge Conf. 130:1-3, D.E. # 238-20

[55] The Court also notes that this instruction appears to be a correct statement of Sixth Circuit authority.  "[T]his circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."  *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004).  New Breed attempts to muddy the waters by discussing the effect of their proffered legitimate, nondiscriminatory reasons for discharge.  The articulation of a legitimate, nondiscriminatory reason for discharge does not require the plaintiff to reargue his prima facie case under the *McDonnell Douglas/Burdine* framework.

harasser."[56]  New Breed raised objections to this instruction at the May 7, 2013, charge
conference.

The Court finds this instruction accurately reflected the law.  New Breed cites a case
from the Southern District of New York for the proposition that "protected activity" does not
encompass a simple rejection of an alleged harasser's behavior.[57]  As New Breed properly notes,
the Southern District of New York's holding was that simply declining a sexual harasser's sexual
advances would turn every sexual harassment claim into a retaliation claim.  Although the Court
is inclined to agree with its sister court's reasoning, it simply does not apply to the case at bar.
The language to which New Breed objects did not instruct the jury that a simple declination or
rejection of sexual advances was sufficient for protected activity; rather, it stated that making a
complaint to a supervisor is protected activity.  The Court finds New Breed's objections on this
point ill-taken.

### Cat's Paw

New Breed's next assignment of error is in the instruction "Cat's Paw Theory."
Specifically, New Breed objects to the portion of the instruction stating "[w]hen an adverse
employment decision, such as a firing, is made by an unbiased Supervisor who was influenced
by another individual who was motivated by a bias, the employer is held liable under the 'rubber
stamp' or 'cat's paw' theory of liability."[58]  New Breed argues this instruction incorrectly stated
the standard of liability for cat's paw liability as laid out by the Supreme Court; and that the

---

[56] Jury Inst. at 37.

[57] *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996).

[58] Jury Instr. at 39.

Court should have laid out the three-part test of *Staub v. Proctor Hospital.*[59]  New Breed goes on to assert the language used implied EEOC need not show the biased non-decisionmaker intended an adverse action.  However, this argument is clearly incorrect, as the complained-of jury instruction contains language clearly stating that the "non-decisionmaking supervisor . . . intended to cause an adverse employment action[.]"[60]

New Breed then argues the Court failed to instruct the jury that if an employer's investigation turns up a legitimate, nondiscriminatory reason for the adverse action unrelated to the bias, there is no retaliation.  The Court notes New Breed takes the Supreme Court's language in *Staub* a step beyond Justice Scalia's opinion.  *Staub* held that "if an employer's investigation results in an adverse action *for reasons unrelated* to the supervisor's original biased action . . . . then the employer will not be liable."[61]  This does not suggest that the mere discovery of an independently-sufficient reason for adverse action automatically shields an employer from liability under the cat's-paw theory as New Breed suggests.  The adverse action itself must be unrelated to the supervisor's biased action.  However, whether New Breed's interpretation of the law is correct or not, New Breed specifically acquiesced to the jury instruction as read to the jury.[62]  New Breed also failed to put the Court on notice that it no longer acquiesced to this

---

[59] *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1193 (2011).

[60] Jury Inst. at 39.

[61] *Staub*, 131 S.Ct. at 1193 (emphasis added).

[62] 5/7/2013 Charge Conf. 138:6-13., D.E. # 238-20.

THE COURT: I guess that is correct. "You must find all three elements." "You must find the following elements to be more likely true than not true." Then list the three elements.

MR. BRITT: Three elements and stop at that point.

instruction either in its initial Rule 50 motion or by objecting after the Court read the instruction to the jury.[63]  Therefore, the Court will not review New Breed's late-raised objection under Rule 51(d)(1)(A) and is precluded from reviewing it under the plain error standard of Rule 51(d)(1)(B).

## Sufficiency of the Evidence

New Breed also asks the Court for either a new trial or judgment as a matter of law on several issues, contending that EEOC either adduced no evidence to prove portions of their case, or that the jury made findings against the great weight of the evidence.  The Court addresses these in turn.

### New Breed's Termination of Pete, Pearson, and Hines

New Breed argues the jury verdict that Calhoun's harassment culminated in tangible employment actions against Pete, Pearson, and Hines was against the clear weight of the evidence.  New Breed first argues that both Pete and Pearson acknowledged their supervisor at the time New Breed terminated them was Elizabeth Malone, not Calhoun.  New Breed goes on to state Pete and Pearson gave no evidence to support a finding that Calhoun had anything to do with their termination.  New Breed maintains Malone's testimony that she recommended terminating Pete and Pearson for repeated performance issues and that Calhoun had nothing to do with the decision was uncontradicted.  Finally, New Breed argues Hines' testimony establishes New Breed fired her for repeated tardiness, and that her bare speculation was not enough to support a jury verdict that Calhoun had something to do with her termination.

---

MR. CROUT: That's fine.

MR. BRITT: That's fine.

[63] Motion Hearing 1:13-13:11, D.E. # 238-21; Trial Trans. 138:2, D.E. # 238-23.

On a motion for judgment as a matter of law or for a new trial based on the sufficiency of the evidence, "the evidence must be construed most strongly in favor of the verdict and all credibility decisions must be resolved in favor of the verdict."[64]  Malone testified that she had a conversation with Calhoun when New Breed transferred Pete and Pearson into her department.[65] The EEOC introduced Malone's deposition testimony that, during that conversation, Calhoun warned her that Pete and Pearson liked to talk more than work.[66]  The EEOC also introduced Pearson's testimony regarding a second, lengthy conversation between Malone and Calhoun the day Malone recommended Pete and Pearson's termination.[67]  A reasonable juror could have resolved the fact issue of whether Calhoun influenced Malone's decision to recommend Pete and Pearson's termination in the EEOC's favor based on this evidence.

Hines testified that, while she was late arriving to work, before she rejected Calhoun's advances and told him to stop Calhoun had told her to notify him if she was going to be late so that he could falsify her time records so that she would not be disciplined.[68]  Hines then testified shortly after she told Hines to stop his harassing behavior, New Breed terminated her for attendance reasons.[69]  The Court finds that a reasonable juror could have drawn an inference that Calhoun, in retaliation for Hines' rejection of his advances, decided to no longer shield Hines from New Breed's attendance policy.

---

[64] *Ross v. Meyer*, 883 F.2d 486, 488 (6th Cir. 1989) (citing *Ratliff v. Wellington Exempted Vill. Schs. Bd. of Educ.*, 820 F.2d 792 (6th Cir. 1987)).

[65] Trial Trans. 619:24-620:8, D.E. # 238-10.

[66] *Id.* 622:21-626:8.

[67] Trial Trans. 165:6-20, D.E. # 238-7.

[68] Trial Trans. 304:23-305:25., D.E. # 238-8.

[69] *Id.* 312:10-24.

The EEOC put forth evidence from which a reasonable juror could determine Calhoun's harassment of Pete, Pearson, and Hines culminated in a tangible employment action. Therefore, the Court finds that the jury's verdict on this point was not against the great weight of the evidence, and **DENIES** New Breed's Motions on this point.

### Faragher/Ellerth

The *Faragher/Ellerth* defenses apply when harassment has not culminated in a tangible employment action.[70] Because the jury could have reasonably determined Calhoun's harassment culminated in tangible employment actions against Pete, Pearson, and Hines, it is unnecessary to determine whether the jury could have found for the EEOC on New Breed's *Faragher/Ellerth* defenses.

### Retaliation

New Breed first argues that there was insufficient evidence that Pearson, Hines, or Partee engaged in any protected activity. To engage in protected activity, a claimant must either oppose conduct made unlawful by Title VII or participate in an investigation, proceeding, or hearing under Title VII.[71]

New Breed argues Hines and Pearson made no complaints before New Breed ended their work assignments. "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always 'constitutes the employee's *opposition* to that activity'"[72] This communication can be as

---

[70] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

[71] 42 U.S.C. § 2000e-3(a).

[72] *Crawford*, 555 U.S. at 851.

simple as telling a supervisor to stop. [73]   As noted above, the EEOC introduced evidence that Hines directly told Calhoun to stop his harassing behavior. The EEOC also introduced evidence Pearson told Calhoun to stop his harassing behavior.[74]   Each testified that they told Calhoun to stop his behavior before New Breed ended their work assignments.

New Breed goes on to argue Partee did not engage in protected activity before his suspension and eventual termination.  Partee testified at trial that, three days before New Breed suspended him, he informed Pete he would "probably" serve as a witness in her harassment complaint against New Breed.[75]   Pete went on to identify Partee as a witness in the investigation of her complaint that same day.[76]   The Court finds New Breed's insistence that Partee had not formally agreed to participate in New Breed's investigation somehow removed him from the protections of Title VII's participation clause unavailing, when under all evidence available to it at the time, New Breed surely believed Partee was participating.  Adopting a rule such as New Breed advances would allow employers preemptively to terminate employees who had not formally testified in an investigation.  The Court is hard-pressed to think of a rule that would run more counter to the purpose of Title VII's anti-retaliation provisions, or one that would be more chilling to an employee considering whether to participate in proceedings.  The Court is mindful

---

[73] *See Berthiaume v. Appalachian Christian Vill. Found., Inc.*, No. 2:07-CV-46, 2008 WL 4138112, at *4 (E.D. Tenn. Sept. 4, 2008) ("[A]n employee has 'engaged in the most basic form of protected activity when she told her supervisor . . . to stop his offensive conduct.'") (quoting *Odgen v. WaxWorks, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000)); *Reed v. Cracker Barrel Old Country Store, Inc.*, 113 F.Supp.2d 1055, 1070 (M.D. Tenn. 2000) ("[A] plaintiff who tells her immediate supervisor that he must stop sexually harassing her is 'engaging in the most basic form of protected conduct.'") (quoting *Quarles v. McDuffie Cnty.*, 949 F.Supp. 846, 853 (S.D. Ga. 1996)).

[74] Trial Trans. 114:17-119:17., D.E. # 238-6.

[75] Trial Trans. 397:21-398:16, D.E. # 238-8.

[76] Trial Ex. 1.

22

that such a rule would create incentives for "prudent employees . . . to keep quiet about Title VII offenses against themselves and others."[77]

New Breed goes on to argue that no relevant decisionmaker knew of Pete, Pearson, or Partee's protected activity. With respect to Pete and Pearson, New Breed essentially reiterates its arguments that Malone, not Calhoun, was responsible for the decision to terminate Pete and Pearson. However, as discussed above, the jury had competent evidence in front of it that Calhoun influenced Malone's decision to recommend Pete and Pearson's termination. New Breed then asserts that the people who decided to terminate Partee, Culp and Hearn, did not know of Partee's protected activity. However, Hearn testified at trial that Calhoun recommended Partee's termination and that New Breed relied on that recommendation. New Breed asserts Calhoun's knowledge of Partee's protected activity was irrelevant, but other than referring the Court to another portion of their brief that does not deal with retaliation, New Breed does not explain why. A reasonable juror could conclude from this evidence that Culp and Hearn became cat's paws to Partee.

Finally, New Breed argues that the EEOC failed to present evidence of a causal connection between Pete, Pearson, Partee, or Hines' protected actions and any adverse employment action.

With respect to Pete, Pearson, and Partee, New Breed argues none of the three took any protected actions before adverse action, destroying any potential causation. However, as the Court discussed above, Pearson engaged in protected activity when she told Calhoun to stop his harassing behavior before New Breed terminated her employment. Also discussed above, Partee

---

[77] *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 279 (2009) (discussing effect of a rule that answering questions in an investigation did not constitute protected activity).

23

engaged in protected activity prior to his suspension and eventual termination by appearing on Pete's list of potential witnesses.  Pete submitted an anonymous complaint through New Breed's sexual harassment hotline shortly before her termination.[78]  New Breed asserts there was no way New Breed could connect Pete's anonymous complaint to Pete; however, the EEOC introduced evidence that Calhoun told Culp, Hearn, and Woods that Pete and Pearson were going to make sexual harassment allegations him.[79]

It was permissible for the jury to infer causation between these protected activities and adverse action due to their close temporal proximity.  New Breed advances the argument that the articulation of legitimate, nondiscriminatory (or non-retaliatory) reasons for their adverse action destroys the inference of causation derived from close temporal proximity.  The Court finds this to be a misreading of the operation of the *McDonnell Douglas/Burdine* framework.  It is true that "[a]fter the defendant articulates its nondiscriminatory reasons for taking the employment action against the plaintiff, the presumption of discrimination created by the prima facie case drops out of the analysis[.]"[80] But, the *McDonnell Douglas/Burdine* framework is not a game of Sorry!, with the plaintiff sent back to the start once a defendant articulates a legitimate, nondiscriminatory reason for its actions.  In other words, the plaintiff is not required to reargue its prima facie case. Rather, the burden of production shifts back to the plaintiff to show the defendant's reason was pretextual.[81]

---

[78] Trial Trans. 22:15-16, 24:2-9; D.E. # 238-6.

[79] Trial Trans. 549:11-22, D.E. # 238-9.

[80] *Gribcheck v. Runyon*, 245 F.3d 547, 552 (6th Cir. 2001).

[81] *Id.*

The EEOC presented evidence to rebut New Breed's asserted nondiscriminatory reasons. Malone testified she fired Pete and Pearson for repeated errors and failure to follow directions despite repeated counseling.[82]  However, Pearson testified she had no history of performance errors,[83] and New Breed did not introduce evidence of these repeated counseling sessions. Pearson further testified Malone praised Pearson's performance.[84]  Pete likewise testified she wasn't aware of any errors, that Malone never counseled her about performance issues, and that Malone never criticized or disciplined her prior to her termination.[85]  Calhoun and Valitutto testified New Breed fired Partee for falsifying time records.[86]  However, the EEOC submitted evidence Calhoun himself was responsible for maintenance of Partee's time records,[87] and New Breed failed to introduce Partee's time records at trial.  From this evidence, a reasonable juror could have come to the conclusion that New Breed's asserted nondiscriminatory reasons for their actions against Pete, Pearson, and Partee were pretext for retaliation.

New Breed further argues the EEOC failed to show a causal connection between Hines' protected activities and any adverse employment action.  New Breed first reiterates arguments about Hines' statements to Calhoun not constituting protected activity, which the Court has already found unpersuasive.  New Breed then repeats its arguments regarding temporal proximity, which the Court has also already found unpersuasive.

---

[82] Trial Trans. 612:16-617:9, D.E. # 238-10.

[83] Trial Trans. 160:22-25, D.E. # 238-6.

[84] *Id.* 161:1-5

[85] Trial Trans. 28:10-22, D.E. # 238-6.

[86] Trial Trans. 569:5-571:3, D.E. # 238-9; Trial Trans. 73:25-74:16, D.E. # 238-19.

[87] Trial Trans. 765:7-766:6, D.E. # 238-11.

New Breed maintains it introduced evidence of a legitimate, nondiscriminatory reason for terminating Hines at the Avaya facility – that Hines had attendance issues.  However, as the Court discussed above, there was evidence before the jury indicating that absent Hines' rejection of and opposition to Calhoun's harassing behavior, Calhoun would have continued to cover for Hines' tardiness.  That Calhoun later recommended Hines for termination based on attendance issues, when previous to her opposition to his behavior he had covered for them, presents a factual question as to whether attendance issues was mere pretext for retaliation – a question the jury had within its province to determine.

New Breed argues it introduced evidence to show a legitimate, nondiscriminatory reason for terminating Hines at the Nail Road facility – that Hines lied on her employment application, in particular that she lied when she stated she had never worked for New Breed before.[88] However, the EEOC introduced evidence that this was not the real reason for Hines' termination. Hines testified that when New Breed fired her from the Nail Road facility, she was not given any reason for her termination other than that New Breed was an "at-will" employer.[89]  Further, Carissa Woods testified that Hines' statement she had never been employed by New Breed on her application at the Nail Road application was correct, because Hines was employed by Select Staffing, not New Breed, when she worked at the Avaya facility.[90]

Because the EEOC introduced sufficient evidence of causal connection between protected action and adverse action for all four Claimants to create a fact question, and because

---

[88] Trial Trans. 1099:11-15, D.E. # 238-16.

[89] Trial Trans. 318:4-320:21; D.E. # 238-8.

[90] Trial Trans. 1100:22-1102:10, D.E. # 238-16.

the EEOC introduced sufficient evidence that New Breed's asserted nondiscriminatory reasons for adverse actions were pretextual, the Court **DENIES** New Breed's Motions on these issues.

### Punitive Damages

New Breed argues the jury improperly awarded the Claimants punitive damages.  To award punitive damages in the Title VII harassment context, the plaintiff must show that the harasser acted with malice or reckless indifference and that the actions of the harasser may be imputed to the employer.[91]  New Breed does not appear to dispute that Calhoun himself acted with malice or reckless indifference.  However, New Breed argues there was insufficient evidence for the jury to determine it could impute Calhoun's actions to New Breed.

A jury may impute malice or reckless indifference to an employer when the harasser is an individual acting in a managerial capacity within the scope of employment.[92]  New Breed directs the Court's attention to the decisions of two district courts in the Sixth Circuit discussing whether someone acts in a managerial capacity to show that Calhoun was not acting as such. The Southern District of Ohio found that to act in a managerial capacity, an individual must "have unilateral authority to hire, fire, demote, transfer, discipline, or alter compensation."[93]  The Eastern District of Kentucky noted the determination of whether someone acted in a managerial capacity includes whether he has "sufficient stature and authority to have some control and discretion and independent judgment over a certain area of the business with some power . . . to set policy for the company."[94]

---

[91] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 539-41 (1999).

[92] *Id.* at 543.

[93] *EEOC v. L.A. Pipeline Constr., Inc.*, No. 2:08-cv-840, 2010 WL 2301292 at *17 (S.D. Ohio June 8, 2010).

[94] *Steinhoff v. Upriver Rest. Jt. Venture*, 117 F. Supp. 2d 598, 604-05 (E.D. Ky. 2000).

The EEOC adduced evidence that Calhoun had the ability to terminate temporary employees such as Pete, Pearson, and Hines unilaterally.[95]  Calhoun could also authorize overtime.[96]  Construing the evidence in the light most favorable to the verdict, there was sufficient evidence in front of the jury from which it could determine Calhoun was acting in a managerial capacity.  Although Calhoun himself disclaimed the authority to terminate temporary workers, this does no more than create an issue of fact; an issue the jury resolved in the EEOC's favor.

New Breed then argues the evidence did not support the jury's determination Calhoun acted within the scope of his employment.  "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment."[97]  However, an exception to that general rule is where harassment results in a tangible employment action.[98]  It was permissible for the jury to find Calhoun's harassment of Pete, Pearson, and Hines culminated in a tangible employment action.  Therefore, the Court finds it was reasonable for the jury to find Calhoun acted within the scope of his employment when he harassed Pete, Pearson, and Hines.

Finally, New Breed argues that the jury's punitive damages award ignored New Breed's good faith efforts to comply with Title VII's requirements.  Under *Kolstad*, a company may avoid punitive damages by showing that it made good faith attempts to comply with Title VII.[99]

---

[95] Trial Trans. 766:16-768:17, D.E. # 238-11.

[96] *Id.* 766:7-15.

[97] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998).

[98] *Id.* at 760 ("[W]e can identify a class of cases where, beyond question, more than the mere existence of the employment relation aids in commission of the harassment: when a supervisor takes a tangible employment action against a subordinate.")

[99] *Kolstad*, 527 U.S. at 545.

"To determine whether an employer engaged in good faith efforts to comply with Title VII, [courts] focus both on whether the employer had a written policy and whether the employer effectively publicized and enforced its policy."[100]   New Breed argues it presented evidence that it promulgated and distributed anti-harassment, anti-discrimination, and anti-harassment policies; that it trained employees and managers on these policies; and enforced these policies.   However, the EEOC presented evidence that New Breed did not distribute these policies to temporary employees like Pete, Pearson, and Hines.[101]   Further, the EEOC introduced evidence that New Breed's implementation of its policies was not effective in practice.   The EEOC introduced evidence that Woods failed to investigate Pete's first call to New Breed's compliance hotline other than to simply ask Calhoun if the charges were true.[102]   From the evidence presented, there is at least a question of fact as to whether New Breed took good-faith efforts to prevent harassment and retaliation, and the Court leaves the jury's determination of this issue undisturbed.

Since there was evidence in front of the jury from which they could find that Calhoun acted in a managerial capacity, and there was evidence in front of the jury from which they could have concluded New Breed did not undertake good-faith efforts to implement its policies, the Court **DENIES** New Breed's Motions on this point.

## **Judicial Estoppel**

New Breed asserts it is entitled to judgment as a matter of law with regard to Pete's claims, as Pete failed to disclose her claims for sexual harassment and retaliation in a Chapter 13

---

[100] *Fischer v. United Parcel Serv., Inc.*, 390 F. App'x 465, 474 (6th Cir. 2010) (internal citations and quotations omitted).

[101] Tr. Ex. 41.

[102] Trial Trans. 1012:20-1017:7, D.E. # 238-13.

bankruptcy proceeding.  Though the Court believes New Breed asserts this affirmative defense of judicial estoppel both untimely and improperly, it will address the merits.

The Supreme Court has summarized the doctrine of judicial estoppel "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken[.]"[103]  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."[104]

Although there is no general formulation of the doctrine of judicial estoppel, several factors generally inform a court's decision to apply this doctrine.[105]

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the first or second court was misled . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or unfair detriment on the opposing party if not estopped.[106]

Applying these factors in the context of a plaintiff who had earlier failed to disclose her claims on a bankruptcy schedule of assets, the Sixth Circuit held that it must find three elements to find the plaintiff judicially estopped.  First, the plaintiff assumed a position contrary to the one asserted under oath in the bankruptcy proceeding; second, that the bankruptcy court adopted the

---

[103] *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

[104] *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000).

[105] *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

[106] *Id.* at 750-51.

contrary position either as a preliminary matter or as part of a final disposition; and third that the omission did not result from mistake or inadvertence.[107]

New Breed's affirmative defense of judicial estoppel fails for the most basic of reasons: EEOC did not assert any position before the bankruptcy court, much less a position contrary to that asserted before this Court. New Breed cites to an unpublished opinion of the Western District of Kentucky for the proposition that judicial estoppel applies although the EEOC brings the current claim, not Pete.[108] Respectfully, the Court finds this holding of its sister court misguided.

It is important to realize the EEOC does not initiate action simply to recover money for an aggrieved claimant; rather, the EEOC sues to vindicate the public's interest in enforcement of anti-workplace-discrimination statutes. "[T]he EEOC does not function solely as a vehicle for conducting litigation on behalf of private individuals."[109] "[T]he EEOC is not merely a proxy for the victims of discrimination[.]"[110] "[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief."[111] That some financial benefit might accrue to Pete as a collateral effect of the EEOC's vindication of the public interest does not give rise to

---

[107] *White v. Wyndham Vacation Ownership, Inc.* 617 F.3d 472, 478 (6th Cir. 2010).

[108] *EEOC v. Dave's Detailing, Inc.* No 3:07-CV-516-S, 2008 U.S. Dist. LEXIS 36202, at *8 (W.D. Ky. May 1, 2008) (Holding it inequitable to not apply judicial estoppel in this context.)

[109] *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 368 (1977).

[110] *General Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 326 (1980).

[111] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296

the sort of identity of interest where the Court could find the EEOC and Pete to be the same party for judicial estoppel purposes.

The Eighth Circuit's discussion in *EEOC v. CRST Van Expedited, Inc.*[112] is instructive on this point.  In *CRST Van Expedited*, the Eighth Circuit held it abuse of a district court's discretion to apply judicial estoppel in a case remarkably similar to the one at bar.[113]  The Eighth Circuit examined the Supreme Court's reasoning in *Waffle House* that the EEOC's mandate to vindicate the public interest did not exclude suits for monetary relief when the claimant had signed a valid arbitration agreement.[114]  Noting that a claimant is not the master of an EEOC action and that the EEOC action precludes an independent suit, the Eighth Circuit stated "[A] court cannot judicially estop the EEOC from bringing suit in its own name to remedy employment discrimination simply because the defendant-employer happened to discriminate against an employee who, herself, was properly judicially estopped."[115]  A recent decision of the Southern District of Ohio found the Eighth Circuit's reasoning persuasive on this point,[116] and this Court does as well.  Therefore, the Court finds, assuming *arguendo* New Breed properly asserted its affirmative defense of judicial estoppel, such defense fails as a matter of law.

### Reduction of Partee's Award

The jury awarded Partee $186,000.00 in compensatory damages and $250,000.00 in punitive damages on his Title VII retaliation claims.  However, "the sum amount of

---

[112] *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012).

[113] *Id.* at 681.

[114] *Id.*

[115] *Id.* at 682.

[116] *EEOC v. JP Morgan Chase, N.A.*, ___ F. Supp. 2d. ____, 2:09-CV-864, 2013 WL 944200, at *4 (S.D. Ohio March 12, 2013);

compensatory damages award . . . and the amount of punitive damages awarded under this section, shall not exceed . . . $300,000.00."[117]  The parties agree this statutory cap applies to Partee's award.  The Court hereby **GRANTS IN PART** New Breed's Motion for Judgment as a Matter of Law and reduces Partee's award to $186,000.00 in compensatory damages and $114,000.00 in punitive damages for a total of $300,000.000.

### Applicability of *Vance* and *Nassar*

Shortly after the jury verdict in this case, the Supreme Court decided *Vance v. Ball State Univ.*[118] and *Univ. of Texas Sw. Med. Center v. Nassar.*[119]  "[C]ourts generally apply the law existing at the time of the decision as opposed to the law existing at the time the conduct giving rise to the case occurred."[120]  "A district court may alter or amend a judgment under Civil Rule 59(e) to correct a clear error of law; account for newly discovered evidence or an intervening change in the controlling law; or otherwise prevent manifest injustice."[121]  The Court accepts *arguendo* that a change in controlling law subsequent to trial may require a new trial.

#### *Vance*

In *Vance*, the Supreme Court clarified the test to determine whether an employee was a supervisor for purposes of vicarious liability under Title VII.  "[A]n employee is a 'supervisor' for purposes of vicarious liability if he . . . is empowered by the employer to take tangible

---

[117] 42 U.S.C. § 1981a(b)(3)(D).

[118] *Vance v. Ball State Univ.*, 570 U.S. ___, 133 S. Ct. 2434 (2013).

[119] *Univ. of Texas Sw. Med. Center v. Nassar*, 570 U.S. ___, 133 S.Ct. 2517 (2013).

[120] *Patel v. Gonzales*, 432 F.3d 685, 690 (6th Cir. 2005) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)).

[121] *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728 (6th Cir. 2012) (citing *GenCorp, Inc. v. Am. Int'll Underwriters*, 178 F.3d 804, 834 (6th Cir 1999)).

employment actions against the victim[.]"[122]  Such tangible employment actions are "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[123]

New Breed argues that it is entitled to judgment as a matter of law on the issue of whether Calhoun was a supervisor for the purposes of vicarious liability under Title VII pursuant to the rule of law announced in *Vance*.  However, the Court disagrees.

First, the Court notes that at trial, New Breed conceded the issue of whether Calhoun was a supervisor.  Second, even had New Breed not conceded this issue, there was sufficient evidence in the record from which the jury could have determined Calhoun was a supervisor. The EEOC introduced testimony from Luann Hearn that Calhoun had unilateral authority to terminate temporary employees.[124]  Therefore, even had New Breed not conceded that Calhoun was a supervisor, there was sufficient evidence in the record for the jury to determine Calhoun was a supervisor under the standard announced in *Vance*.  The Court declines to second-guess New Breed's decision to concede this issue at trial, particularly when it is not at all clear they would have been entitled to judgment as a matter of law on this issue had they not conceded. Therefore, the Court **DENIES** New Breed's Motions on this issue.

### *Nassar*

In *Nassar*, the Supreme Court held that the standard for causation under a Title VII retaliation case would be the "but-for" standard of traditional tort law, not the "motivating

---

[122] *Vance*, 133 S.Ct. at 2439.

[123] *Id.* at 2442.

[124] Trial Trans. 766:16-768:17, D.E. # 238-11.

factor" standard used in Title VII discrimination claims.[125]  New Breed argues that this change in applicable law entitles them to judgment as a matter of law on the EEOC's retaliation claims, or that it at least entitles them to a new trial based on erroneous jury instructions.

With respect to New Breed's argument the standard announced in *Nassar* entitles them to judgment as a matter of law, the Court disagrees.  New Breed argues that this standard forbids the jury from drawing an inference of causal connection from close temporal proximity.  However, the Court does not read *Vance* to mean this at all.  The holding of *Nassar* is that the ultimate issue for the jury's consideration is whether a defendant took adverse action against a plaintiff "because of" the plaintiff's protected action, and that "because of" meant that the defendant would not have taken that adverse action "but for" the plaintiff's protected action.[126]  This holding leaves undisturbed the Sixth Circuit's jurisprudence regarding the propriety of an inference of causal connection when adverse action occurs in close temporal proximity to protected action.  To argue otherwise misunderstands the nature of the Supreme Court's holding.

With respect to New Breed's argument that the holding of *Nassar* rendered the Court's instructions to the jury incorrect, the Court also disagrees.  The jury instructions as read made no reference to the motivating factor standard which the Supreme Court rejected in *Nassar*.  In fact, the jury instructions on retaliation used the language of Title VII's anti-retaliation provisions:

> That is, the Plaintiff must establish that Ms. Pete, Ms. Pearson, Ms. Hines, and Mr. Partee were subjected to adverse employment actions by the Defendant *because of* their internal complaints about alleged sex discrimination . . . . Remember, at all times, that the ultimate question in a retaliation claim is whether or not the Defendant took an adverse employment action against Ms. Pete, Ms. Pearson, Ms. Hines, or Mr. Partee *because* they engaged in a protected activity.[127]

---

[125] *Nassar*, 133 S.Ct. at 2533.

[126] *Id*. at 2527.

[127] Jury Inst. at 36 (emphasis added).

Title VII's anti-retaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because* he has opposed any practice made an unlawful employment practice by this subchapter, or *because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[128]

As the Supreme Court noted in *Gross v. FBL Financial Services, Inc.*, the words "because of" have the ordinary meaning "[b]y reason of, on account of."[129] The Court went on to explain that the words "because of" meant a "but for" causation standard.[130] The Court fails to see the flaw in jury instructions that instruct a jury that they must find that New Breed took adverse action "because of" the Claimant's protected actions, when the Supreme Court has noted such language is identical to the "but for" standard approved in *Nassar*.

Therefore, because *Nassar* did not affect the ability of the jury to draw an inference of causal connection from temporal proximity between a protected action and an adverse action, and because the jury instructions as read properly instructed the jury on the "but for" causation standard approved in *Nassar*, the Court **DENIES** New Breed's Motions on this point.

## <u>CONCLUSION</u>

Because New Breed either acquiesced to the jury instructions as given, the jury instructions as given were not plainly erroneous, or because the jury instructions as given were correct statements of law, the Court **DENIES** New Breed's Motion for New Trial or to Alter the Judgment on the ground of erroneous jury instructions. Because the jury had sufficient evidence to support its verdict on the issues New Breed raises, the Court **DENIES** New Breed's Motion

---

[128] 42 U.S.C. § 2000e-3(a) (emphasis added).

[129] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

[130] *Id.*

for a New Trial or to Alter the Judgment and **DENIES IN PART** New Breed's Motion for

Judgment as a Matter of Law on the sufficiency of the evidence.  Because the affirmative

defense of collateral estoppel only applies when the same party asserts different claims in

different proceedings, the Court **DENIES IN PART** New Breed's Motion for Judgment as a

Matter of Law on the affirmative defense of judicial estoppel.  Because the jury's award to Mr.

Partee exceeded Title VII's statutory cap, the Court **GRANTS IN PART** New Breed's Motion

for Judgment as a matter of law and reduces Partee's award to $186,000.00 in compensatory

damages and $114,000.00 in punitive damages.  Because the Court finds *Vance* and *Nassar* did

not change the applicable standards of law in this case, and because the Court finds that the jury

instructions adequately instructed the jury on post-*Vance* and *Nassar* standards of law, the Court

**DENIES** New Breed's Motion for a New Trial or to Alter the Judgment and **DENIES IN PART**

New Breed's Motion for Judgment as a Matter of Law.

       **IT IS SO ORDERED.**

                               **s/ S. Thomas Anderson**
                               S. THOMAS ANDERSON
                               UNITED STATES DISTRICT JUDGE

                               Date:  August 22, 2013.