# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  April 22, 2015

Mr. Matthew C. Blickensderfer
Frost Brown Todd
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202

Ms. Susan Ruth Oxford
U.S. Equal Employment Opportunity Commission
Office of General Counsel
131 M Street, N.E.
Washington, DC 20507

Mr. Richard E.F. Valitutto
New Breed Logistics
4043 Piedmont Parkway
High Point, NC 27265

Re:  Case No. 13-6250, *EEOC v. New Breed Logistics*
Originating Case No. : 2:10-cv-02696

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Thomas M. Gould

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellee,*

*v.*

No. 13-6250

NEW BREED LOGISTICS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cv-02696—S. Thomas Anderson, District Judge.

Argued:  October 9, 2014

Decided and Filed:  April 22, 2015

Before:  COLE, Chief Judge; KEITH and BATCHELDER, Circuit Judges.

———————————

### COUNSEL

———————————

**ARGUED:**  Matthew C. Blickensderfer, FROST BROWN TODD LLC, Cincinnati, Ohio, for
Appellant.  Susan R. Oxford, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Washington, D.C., for Appellee.  **ON BRIEF:**  Matthew C. Blickensderfer,
FROST BROWN TODD LLC, Cincinnati, Ohio, Richard EF Valitutto, NEW BREED, INC.,
High Point, North Carolina, for Appellant.  Susan R. Oxford, UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

———————————

### OPINION

———————————

DAMON J. Keith, Circuit Judge.  The Equal Employment Opportunity Commission
("EEOC") brought this Title VII sexual harassment and retaliation action against New Breed
Logistics ("New Breed").  The EEOC alleged that James Calhoun, a New Breed supervisor,

No. 13-6250                    *EEOC v. New Breed Logistics*                          Page 2

sexually harassed Jacquelyn Hines, Capricius Pearson, and Tiffany Pete and retaliated against the women after they objected to his sexual advances. The EEOC also alleged that Calhoun retaliated against Christopher Partee, a male employee, who verbally opposed Calhoun's sexual harassment and supported the women's complaints. A jury found New Breed liable under Title VII for Calhoun's sexual harassment and retaliation and awarded all four employees compensatory and punitive damages totaling over $1.5 million dollars. New Breed filed post-trial motions for a new trial and judgment as a matter of law, challenging the sufficiency of the evidence as to liability and punitive damages. New Breed also alleged that it was entitled to a new trial because the instructions submitted to the jury were erroneous. The district court denied both motions, concluding that evidence supported the jury's verdict on each of the claims and that New Breed's challenges to the jury instructions were either waived or without merit. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

New Breed is a supply-chain logistics company with a warehouse in Memphis, Tennessee (the "Avaya Facility"). When New Breed opened the Avaya facility in October 2007, temporary employees supplied by staffing agencies accounted for approximately 80% of its workforce. R. 261 at 49, Page ID# 5787. New Breed only gives permanent employees an employee handbook that contains a copy of the sexual harassment policy. Appellant's Br. at 7; Appellee's Br. at 6. Temporary employees are not given a copy of the handbook. R. 262 at 15, Page ID# 5889. New Breed maintains that the relevant issues applicable to temporary employees are covered during orientation. *Id.* At the relevant time, Carissa Woods served as New Breed's Senior Human Resources ("HR") manager. R. 267 at 11, Page ID# 6754. Luanne Hearn was HR supervisor for the Avaya facility. R. 261 at 46, Page ID# 5784. Richard Valitutto served as vice president and general counsel for New Breed. R. 268 at 36, Page ID# 6911.

James Calhoun was a supervisor in the Receiving Department in the Avaya facility. R. 266-1 at 77, Page ID# 6572. In April 2008, New Breed hired Tiffany Pete and Jacquelyn Hines through Select Staffing, a staffing agency. R. 259 at 10, Page ID# 5450; R. 266 at 111, Page ID# 6476. Pete and Hines were assigned to the Shipping Department. R. 259 at 9, Page ID# 5449; R. 266 at 113, Page ID# 6478. A few days after they joined the Shipping Department, Calhoun

transferred Pete and Hines to his department. R. 259 at 11, Page ID# 5451; R. 266 at 113, Page ID# 6478.

Capricius Pearson met Calhoun for the first time when he assisted her with securing employment at New Breed. R. 259 at 101–02, Page ID# 5541–42. Upon arriving to New Breed, Pearson was assigned to Receiving. *Id.* at 108, Page ID# 5548.

Christopher Partee was a forklift driver in Receiving, also under Calhoun's supervision. R. 260 at 79–80, Page ID# 5671–72. While under Calhoun's supervision, Partee worked closely with Calhoun, doing "little special project[s]" for him. *Id.* at 105–06, Page ID# 5697–98.

## A. Calhoun's Sexual Harassment and the Claimants' Responses

Calhoun repeatedly made sexually suggestive comments to Pete, Pearson, and Hines while they were in his department, some of which were overheard by Partee.

*Pete*: At trial, Pete testified that Calhoun would make sexual comments to her several times a day, "every day."[1] R. 259 at 16–17, Page ID# 5456–57. Pete testified that she told Calhoun to "leave [her] alone" daily. *Id.* at 17, Page ID# 5457.

*Pearson*: Pearson testified that Calhoun made similar sexually explicit comments to her during her employment. Pearson also testified that Calhoun's harassment often involved physical contact. For example, on one occasion, Calhoun walked up behind Pearson and pressed his stomach and private parts to her backside. *Id.* at 121, Page ID# 5561. Pearson testified that she told Calhoun to "stop touching" her. *Id.* at 114, Page ID# 5554. On another occasion, Pearson overheard a few of the other female employees discussing a plan to record Calhoun's sexually harassing comments. *Id.* Consequently, Pearson approached Calhoun and "ask[ed] him to stop talking dirty to me like he was and to other people as well because he was going to get in trouble." *Id.* Calhoun laughed and responded "that he wasn't going to get in trouble, that he ran th[e] area, [and that] anybody who went to Luanne on him would be fired." *Id.* at 114–15, Page ID# 5554–55.

---

[1] Because the comments and the sexual harassment are not in dispute on appeal, the Court finds no need to detail the sexually harassing comments in its recitation of the facts.

No. 13-6250                 *EEOC v. New Breed Logistics*                 Page 4

*Hines*: Calhoun also directed his sexually explicit comments to Hines. One day, Calhoun made a sexual comment to Hines at her desk. R. 260 at 12–13, Page ID# 5604–05. Hines testified that she "went off" and told Calhoun to "get the f--- out of my face. I d[on't] want to hear that [s---] today." *Id.* at 13, Page ID# 5605. Hines testified that, the next day, Calhoun informed the entire Receiving Department: "This is [my] department, [I] run this [s---]." *Id.* at 14, Page ID# 5606.

*Partee*: While he was employed at New Breed, Partee both witnessed and overheard Calhoun's harassment towards female employees in Receiving. *Id.* at 86, Page ID# 5678. Partee testified that, on one occasion, he admonished Calhoun, telling him to "calm down on making them comments because I don't believe them women was liking that." *Id.* at 93, Page ID# 5685. Calhoun responded, "I just be playing with them, and I don't be meaning no harm." *Id.*

**B. Adverse Employment Action**

In quick succession, Hines, Pete, Pearson, and Partee were all terminated from New Breed. Evidence was adduced at trial to demonstrate that Calhoun was directly or indirectly involved in each employee's termination.

*Hines's dismissal*: Hines testified that, while she worked under Calhoun's supervision, she was tardy for her shift on several occasions. *Id.* at 11, Page ID# 5603. Calhoun informed Hines not to clock in if she was late because he would clock her in manually so the system would not reflect that she was tardy. *Id.* Hines asked Calhoun to clock her in on two occasions pursuant to his instruction.  *Id.* On the day she complained to Calhoun about his harassment, however, Select Staffing called to warn her about attendance. *Id.* at 72, Page ID# 5664. According to Hines, Select Staffing had never called her before with any attendance concerns. *Id.* A week later, Select Staffing called to terminate Hines for attendance reasons. *Id.* at 18, Page ID# 5610. Although Select Staffing communicated the termination decision, at trial, Woods testified that Calhoun terminated Hines's employment. R. 267 at 27, Page ID# 6670; *see also* R. 261 at 60, Page ID# 5798 (Hearn testifying that Calhoun had unilateral authority to terminate temporary employees).

*Pete's call to the complaint line; Pete's and Pearson's subsequent transfer and dismissal*: At some unspecified time, Calhoun learned that Pete intended to make a complaint against him via New Breed's complaint line. R. 266-1 at 100, Page ID# 6595. Calhoun testified that he discussed the anticipated complaint with Hearn and Sheldon Culp, the plant manager and Calhoun's direct supervisor. *Id.* at 124, Page ID# 6619. Calhoun testified that, during the meeting, Hearn and Culp decided to fire Pete and Pearson per his recommendation. *Id.*

On May 13, as anticipated, Pete placed an anonymous call to New Breed's complaint line. Pete stated: "James Calhoun makes sexually explicit remarks to female employees." R. 259 at 22, Page ID# 5462, Doc. 34 at 7. The "Alertline Confidential Memorandum" generated for the call indicated that the caller stated that s/he would not report the issue to management for fear of retaliation. *Id.* at 8. The memorandum also requested that a company representative investigate the matter by speaking with employees at the location. *Id.* Valitutto emailed Woods and requested that she investigate the complaint. *Id.* at 6. On May 14, Woods traveled to the Avaya facility and interviewed Calhoun for a half hour. R. 267 at 43, Page ID# 6786. Woods asked Calhoun five questions related to his alleged sexual remarks and determined that there was no misconduct. Doc. 34 at 9. Woods interviewed no other employees during her visit to the site. On May 15, Woods posted a message for the anonymous caller on the complaint line, requesting more information and the names of witnesses.

At some unspecified time, Calhoun transferred Pete and Pearson to the Returns Department.[2] R. 259 at 25, Page ID# 5465. Elizabeth Malone was the supervisor in Returns. R. 266-1 at 98, Page ID# 6593. Calhoun testified that he told Malone that Pete and Pearson started altercations so she would need "to keep an eye on them." *Id.* at 99, Page ID# 6594. Calhoun also told Malone that they "were not good workers." *Id.* Calhoun warned Malone that Pete and Pearson talked more than they worked. R. 266-2 at 24, Page ID# 6667.

On May 17, New Breed terminated Pete's and Pearson's employment. Pete and Pearson testified that, on the day they were terminated, they saw Malone and Calhoun talking for about

---

[2]New Breed did not produce any personnel records at trial to verify when Pete and Pearson were transferred to the Returns Department. *Id.* at 17, Page ID# 6660. The trial testimony reflects, however, that Calhoun transferred Pete and Pearson to Returns sometime between his meeting with Culp and Hearn and Pete's anonymous complaint. R. 259 at 25, Page ID# 5465.

forty-five minutes to an hour. R. 259 at 30, Page ID# 5470; R. 266 at 14, Page ID# 6379. Pearson testified that she could not hear what was said. R. 266 at 14, Page ID# 6379. At trial, Calhoun took credit for getting Pete and Pearson fired. R. 266-1 at 124, Page ID# 6619. Calhoun confirmed that he "didn't need the authority to fire [Pete and Pearson] when all [he] had to do [wa]s . . . speak to Ms. Malone and let her know what [he] thought about them as employees." R. 266-1 at 142, Page ID# 6637.

Malone stated that she recommended that Pete and Pearson be terminated because they made a number of errors, including a final error with a "Gaylord box," a box for storing returned products. R. 266-2 at 46, Page ID# 6689. Malone indicated, however, that Pete and Pearson corrected the error after she counseled them on the box. *Id.* at 79, Page ID# 6722. At trial, Malone conceded that Pete and Pearson were in training during the majority of the time they were in her department. *Id.* at 81, Page ID# 6724. She offered inconsistent testimony regarding how much time employees are given to improve following training. In her deposition, Malone stated that she gives employees about a month or two to improve after training. *Id.* at 82, Page ID# 6725. At trial, however, Malone stated that she only gives employees a week or two to improve. *Id.* at 81, Page ID# 6724. While Malone initially testified that Pete and Pearson worked in her department for two to four weeks, *id.* at 16, Page ID# 6659, she later testified that they were only in her department for about a week, *id.* at 72, Page ID# 6715.

*Partee's Dismissal*: On May 21, Pete, who was no longer employed with New Breed at this time, placed another call to the compliance hotline to identify Partee as a witness. Doc. 34 at 12. Woods contacted Partee for an interview. R. 260 at 112, Page ID# 5704. The same day that Woods interviewed Partee about the harassment, Hearn informed Partee that he was being terminated because Calhoun accused him of "stealing time"—clocking in early or staying late without authorization. *Id.* at 107, Page ID# 5699. When Partee informed Hearn that he "never stole time," she replied, "I have to go on the word of my supervisor." *Id.* Partee testified that no one at New Breed ever mentioned issues with his time entries. *Id.* at 108, Page ID# 5700. Calhoun also never discussed any time-entry concerns with Partee. *Id.* Partee further testified that employees only clocked in early upon Calhoun's request. *Id.* Partee testified that he only stayed late with Calhoun's permission. *Id.* at 109, Page ID# 5701. Calhoun would also ask Partee

to get lunch for him and would tell Partee that he would "fix" his time if the lunch run exceeded Partee's lunchtime allotment. *Id.* at 110–11, Page ID# 5702–03. On May 27, the same day that Woods completed her investigation of Calhoun and recommended his termination for harassment, Valitutto approved Partee's termination. R. 268 at 93, Page ID# 6968.

## C. Jury Trial

Before the district court submitted the case to the jury, New Breed moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). New Breed argued that the jury could not find for the EEOC because: 1) neither Hines, Pearson, nor Partee engaged in protected activity prior to their termination; 2) there is no evidence to establish that any claimant was terminated because of protected activity; and 3) the evidence did not establish that New Breed acted with malice or reckless indifference to any claimants' federally protected rights. The district court took the motion under advisement until after the jury returned its verdict. At the conclusion of the seven-day trial, the jury found in favor of the EEOC on both the harassment and retaliation claims. The jury awarded all four claimants a total of more than $1.5 million in compensatory and punitive damages and other monetary relief. Following the jury's verdict, New Breed filed a renewed motion for judgment as a matter of law under Rule 50(b) and a motion for a new trial under Rule 59(a)(1)(A). New Breed's motions reiterated the grounds set forth in its Rule 50(a) motion and challenged the district court's jury instructions. The district court denied both of these motions, giving rise to this appeal.

## II.  DISCUSSION

We review *de novo* a district court's decision to deny a renewed motion for judgment as a matter of law under Rule 50(b). *Radvansky v. City of Olmsted*, 496 F.3d 609, 614 (6th Cir. 2007). When reviewing the district court's decision, we apply the same deferential standard as the district court. *Id*. Thus, we may grant the motion "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Id.* (citation omitted). When reviewing the district court's decision, this court "may not weigh the evidence, pass on the credibility of witnesses, or substitute [our] judgment for that of the jury." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) (citation omitted).

We review the district court's decision to deny a Rule 59(a) motion for a new trial for an abuse of discretion. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994). Under Rule 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." The language of Rule 59(a) has been interpreted "to mean that a new trial is warranted when a jury has reached a 'seriously erroneous' result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996). When a party requests a new trial on the ground that the verdict is against the weight of the evidence, we will uphold the jury verdict if it is one "the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (citation omitted).

Since New Breed's Rule 50(b) and Rule 59(a) motions both challenge the sufficiency of the evidence, we will address them concurrently.

## A.  New Breed is Not Entitled to Judgment as a Matter of Law or a New Trial as to the Retaliation Verdict.

Title VII prohibits an employer from retaliating against an employee who has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These two provisions, respectively, constitute the "opposition" and the "participation" clauses. To establish a *prima facie* case of retaliation under either clause of Title VII's anti-retaliation provision, the EEOC had to demonstrate that the claimants: (1) engaged in activity protected by Title VII; (2) the defendant knew of their protected activity; (3) thereafter, the defendant took adverse action against the claimants; and (4) a causal connection existed between the protected activity and the materially adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). If the EEOC established a

*prima facie* case of retaliation, the burden of production shifted to New Breed to proffer some legitimate, nonretaliatory reasons for its actions. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To the extent New Breed proffered such reasons, the burden of persuasion shifted back to the EEOC to show that the proffered reasons were not the true reasons for the employment decision, i.e., that the reasons were a pretext for retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–16 (1993); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Furthermore, the EEOC had to establish but-for causation to establish the retaliation claim. This standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

On appeal, New Breed argues that the evidence does not support the jury's retaliation verdict because: 1) neither Hines, Pearson, nor Partee engaged in protected activity constituting opposition while employed at New Breed; 2) the relevant decision makers did not know of any protected activity; and 3) any protected activity was not the but-for cause of the adverse employment action. We will address each of these issues in turn.

1. *Protected Activity*

New Breed contends that neither Hines, Pearson, nor Partee engaged in protected activity before their terminations. Specifically, New Breed argues that the act of telling Calhoun to cease his harassment does not constitute protected activity under Title VII. The district court rejected this argument, holding that protected conduct "can be as simple as telling a supervisor to stop." R. 269 at 21-22, Page ID# 7137–38.  Because we have not ruled on whether a complaint to the harassing supervisor constitutes protected activity, the district court relied on the reasoning of two district court cases in support of its conclusion. *See Berthiaume v. Appalachian Christian Vill. Found., Inc.*, No. 2:07-cv-46, 2008 WL 4138112, at *4 (E.D. Tenn. Sept. 4, 2008) ("[A]n employee has 'engaged in the most basic form of protected activity when she told her supervisor . . . to stop his offensive conduct'" (quoting *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000))); *Reed v. Cracker Barrel Old Country Store, Inc.*, 133 F. Supp. 2d 1055, 1070 (M.D. Tenn. 2000) ("[A] plaintiff who tells her immediate supervisor that he must stop sexually

harassing her, is 'engaging in the most basic form of protected conduct; namely, telling a harasser, who was also serving as her supervisor, to cease all forms of physical and verbal harassment.'" (quoting *Quarles v. McDuffie Cnty.*, 949 F. Supp. 846, 853 (S.D. Ga. 1996))).

New Breed contends that we should not follow the reasoning of *Berthiaume* and *Reed*. Instead, we should adopt a rule that concludes that resisting a harasser's advances or talking back to a harasser is not protected activity under Title VII's anti-retaliation provision. In response, the EEOC argues that the district court's conclusion is supported by, most importantly, the language of the opposition clause of Title VII's anti-retaliation provision, as well as Supreme Court and Sixth Circuit precedent. We agree with the EEOC that a complaint to a harassing supervisor qualifies as protected activity.

The language of the "opposition" clause of Title VII's anti-retaliation provision states that "it shall be an unlawful employment practice for an employer to discriminate against any . . . employee[] . . . because [the employee] opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). In *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, the Supreme Court held that "[t]he term 'oppose' being left undefined by the statute, carries its ordinary meaning: 'to resist or antagonize . . . ; to contend against; to confront; resist; withstand.'" 555 U.S. 271, 276 (2009) (citing Webster's New Int'l Dictionary 1710 (2d ed. 1958)) (additional internal citation omitted). Consistent with this expansive definition, we have held that "[t]he opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). We have also given "great deference" to the EEOC's interpretation of "opposing" conduct as "including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579, 580 n.8 (6th Cir. 2000).

Applying these broad definitions, we conclude that a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII. Sexual harassment is without question an "unlawful employment practice." If an employee demands that his/her supervisor stop engaging in this unlawful practice—i.e., resists or confronts the supervisor's

unlawful harassment—the opposition clause's broad language confers protection to this conduct.[3] Importantly, the language of the opposition clause does not specify to whom protected activity must be directed. *Warren v. Ohio Dept. of Public Safety*, 24 F. App'x 259, 265 (6th Cir. 2001) ("Under the opposition clause, . . . [t]here is no qualification on who the individual doing the complaining may be or on who the party to whom the complaint is made."). Therefore, it would be unfair to read into the provision a requirement that a complainant only engages in protected activity when s/he opposes the harassment to a "particular official designated by the employer." *See Ross v. Baldwin Cnty. Bd. of Ed.*, No. 06-0275, 2008 WL 820573, at *6 (S.D. Ala. Mar. 24, 2008) ("It would be anomalous, and would undermine the fundamental purpose of the statute, if Title's VII's protections from retaliation were triggered only if the employee complained to some particular official designated by the employer.").

We note that only one of our sister circuits has concluded that communication directed solely to a harassing supervisor does not constitute protected activity. In *Frank v. Harris County*, 118 F. App'x 799, 804 (5th Cir. 2004), the Fifth Circuit held that the plaintiff "provide[d] no authority for the proposition that a single 'express rejection' to [a harassing supervisor] constitutes as a matter of law a protected activity." In reaching this conclusion, the Fifth Circuit neither assessed the language of the opposition clause of Title VII nor indicated why a complaint to the harassing supervisor would not fall within the confines of the provision. *See generally id.* Therefore, we are not persuaded by *Frank*. Nor are we persuaded by the other case New Breed cites in support of its position, *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437 (S.D.N.Y. 1996). In *Del Castillo*, the district court held that "simply [ ] declining a harasser's sexual advances" is not protected activity because "[i]f it were otherwise, every harassment claim would automatically state a retaliation claim as well." *Id.* at 438–39. We are not convinced by this logic. Assuming the other elements of a *prima facie* case are present, a harassment claim only becomes a retaliation claim if, after the harassee opposes the harassment, the harasser initiates adverse

---

[3]Other courts have arrived at a similar conclusion, likewise relying on the mere wording of Title VII's anti-retaliation provision. *See, e.g., Ogden*, 214 F.3d at 1007 (noting that, pursuant to 42 U.S.C. § 2000e-3(a), "[e]mployers may not retaliate against employees who 'oppose discriminatory conduct,' . . . and the jury reasonably concluded Ogden [opposed discriminatory conduct] when she told Hudson to stop his offensive behavior"); *Tate v. Exec. Mngmt. Servs., Inc.*, No. 105-cv-47, 2007 WL 1650410, at *2 (N.D. Ind. June  4, 2007), *rev'd on other grounds*, 546 F.3d 528 (7th Cir. 2008) ("A straightforward reading of the statute's text requires finding that rebuffing sexual harassment can in some situations be considered opposition to an unlawful employment practice.").

No. 13-6250              *EEOC v. New Breed Logistics*              Page 12

action against the victim. Thus, giving retaliation victims protection where they complain to the harasser will not morph all harassment claims into a retaliation claim, absent some materially adverse action.

Here, at the very least, all four complainants requested that Calhoun stop his sexually harassing behavior before their terminations. Consistent with our holding today, these complaints constitute protected activity. Accordingly, the district court did not err in concluding that there is evidence sufficient to support the jury's verdict on the retaliation claim as to the protected-activity prong.

### 2. *Knowledge of Protected Activity and Adverse Action*

New Breed next contends that the jury's retaliation verdict is unsupported because there is no evidence that the relevant decision makers knew of any alleged protected activity when they took adverse action against Pete, Pearson, and Hines.[4] We address this argument as it relates to each individual claimant.

*Hines*: As to Hines, New Breed reiterates its argument that Hines never engaged in communication constituting protected activity covered under the statute. We have already concluded that Hines engaged in protected activity when she opposed Calhoun's sexually harassing comments. Thus, Calhoun had knowledge of Hines's protected activity (since it was directed towards him) when he subsequently terminated her employment.

*Pete and Pearson*: With regard to Pete and Pearson, New Breed asserts that there is no evidence that Malone knew of any protected activity when she recommended that Pete and Pearson be terminated for poor performance. The district court rejected this argument and concluded that "the jury had competent evidence in front of it that Calhoun influenced Malone's decision to recommend Pete and Pearson's termination[s]." R. 269 at 23, Page ID# 7139.

The theory that New Breed may still be held liable for Malone's termination of Pete and Pearson is known as the "cat's paw" theory of liability. Under the cat's paw theory of liability, we focus on whether another individual and not the actual decision maker "is the driving force

---

[4]New Breed does not dispute that the relevant decision makers knew that Partee was a witness for Pete when they terminated his employment. Therefore, the relevant decision makers were aware of at least one instance of protected activity from Partee.

behind the employment action." *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011). Thus, "[w]hen a decisionmaker acts in accordance with a retaliator's bias without [her]self evaluating the employee's situation, the retaliator clearly causes the tangible employment action, regardless of which individual actually enforces the adverse transfer or termination." *Roberts*, 283 F. App'x at 333 (internal quotations and citation omitted). Applying liability in this circumstance accords with agency principles in that "the [retaliator] is the decisionmaker, and the titular decisionmaker is a mere conduit for the [retaliator's] discriminatory animus." *Id.* (internal quotations and citation omitted); *see also Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (6th Cir. 2008).

Here, the EEOC presented evidence to the jury to show that, after Pete and Pearson were transferred to Returns, Calhoun disparaged their work ethic to Malone. Trial testimony established that, on the day Pete and Pearson learned that they were being terminated, they saw Calhoun and Malone engaging in a conversation. Later that day, Malone terminated Pete and Pearson. Malone stated that the reason for the termination was poor performance. However, Pete and Pearson had only been in Returns for a week. Importantly, at trial, Malone admitted to the jury that she usually trains new employees for two weeks and then gives them a month or two to adjust to the department. Furthermore, at trial, Calhoun took credit for getting Pearson and Pete fired. He stated that he "didn't need the authority to fire [Pete and Pearson] when all [he] had to do [wa]s . . . speak to Ms. Malone and let her know what [he] thought about them as employees." R. 266-1 at 142, Page ID# 6637. The jury could have reasonably concluded from this evidence that Calhoun influenced Malone's decision to terminate Pete and Pearson, making Malone the conduit to Calhoun's retaliatory animus.

### 3. *But-For Causation*

New Breed argues, lastly, that the evidence does not establish that any protected activity was the but-for cause of the adverse employment actions taken against any claimant. As noted previously, under *Nassar*, a Title VII claimant must show that his or her protected activity was a but-for cause of the adverse action by the employer. 133 S. Ct. at 2533; *see also Seoane-Vazquez v. Ohio State University*, 577 F. App'x 418, 428 (6th Cir. 2014) (holding that cat's paw liability will only lie in the retaliation context if the claimant can show that the non-decision maker's

"retaliatory actions were a but-for cause" of the decision maker's decision to take adverse action).

The district court concluded that it was permissible for the jury to infer causation between the protected activities of Hines, Pete, Pearson, and Partee and their terminations due to their close temporal proximity. New Breed argues that, after *Nassar*, close temporal proximity, alone, is not sufficient to create an inference of causation. The district court did not, however, confine its analysis of causation to close temporal proximity. The district court further found that the EEOC submitted evidence sufficient for the jury to reject New Breed's legitimate, nonretaliatory reasons for the claimants' terminations—Hines (attendance reasons), Pete and Pearson (performance reasons), and Partee (time-clock improprieties)—as pretextual. Thus, in other words, the district court concluded that the jury had before it evidence sufficient to conclude that Calhoun's retaliation was the but-for cause of the claimants' adverse employment actions. New Breed contends that the district court erred when it found evidence sufficient to support causation. We disagree.

*Hines*: New Breed contends that but-for causation is lacking because Calhoun recommended Hines's termination for attendance reasons. The EEOC presented evidence, however, to show that, prior to her rejection of his sexual advances, Calhoun had no problems with Hines's tardiness, even offering to clock in for Hines when she was late. The jury could have reasonably concluded, based on this evidence, that but-for Calhoun's retaliation, Hines would not have been terminated.

*Pete and Pearson*: New Breed contends that Pete and Pearson cannot establish that their protected activity was the but-for cause of their terminations. Specifically, New Breed again argues that it was Malone who recommended that Pete and Pearson be terminated for performance reasons. As noted previously, however, the jury could have reasonably inferred from the circumstances surrounding Malone's treatment of Pete and Pearson that, but-for Calhoun's disparaging remarks (motivated by retaliation), Malone would not have recommended that Pete and Pearson be terminated.

*Partee*: As to Partee, New Breed contends that he was terminated because "independent inquiries" by Hearn and Culp confirmed that he engaged in time-clock improprieties. This

argument ignores that the jury heard evidence that it was Calhoun who reported to Hearn that Partee violated time-clock practices. Additionally, the jury heard Hearn and Woods testify that Calhoun had the authority to clock Partee in and out manually and did, in fact, exercise this authority. The jury could have reasonably dismissed New Breed's assertion that an independent investigation verified Calhoun's allegations since Calhoun had the authority to control time-clock entries for employees like Partee. As such, there was evidence from which the jury reasonably could have concluded that, but-for Partee's opposition to Calhoun's sexual harassment, he would not have been terminated.

Accordingly, we affirm the district court's judgment denying New Breed's motions for a new trial and judgment as a matter of law as to the retaliation claim.

## B.  New Breed is Not Entitled to a New Trial on the Sexual Harassment Verdict Because Calhoun's Harassment Resulted in Tangible Employment Action.

An employer is vicariously liable for a supervisor's harassment of an employee under the supervisor's authority when the harassment results in tangible employment action. *Burlington, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). A tangible employment action is any action effecting "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Id.* at 753–54.  In the absence of tangible employment action, an employer may still be held liable for harassment "unless the employer affirmatively shows that it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and that the plaintiff  'unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" *EEOC v Harbert-Yeargin, Inc.*, 266 F.3d 498, 510 (6th Cir. 2001) (quoting *Burlington*, 524 U.S. at 765 *and Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

New Breed contends that the district court erred in denying its motion for a new trial as to the harassment claim because: 1) there exists no causal connection between Calhoun's

harassment and the terminations of Pete, Pearson, and Hines, and 2) Pete, Pearson, and Hines unreasonably failed to take advantage of methods to report and correct the harassment. The district court concluded that the jury could have reasonably determined that Calhoun's sexual harassment culminated in the tangible employment action taken against Pete, Pearson, and Hines, making New Breed vicariously liable. We find no error in this conclusion.

As discussed in detail above, sufficient evidence was presented to the jury from which it could reasonably conclude that Calhoun: 1) terminated Hines, pursuant to his authority to unilaterally terminate temporary employees, and 2) used his supervisory authority to influence Malone to terminate Pete and Pearson, after these individuals opposed his sexual harassment. Thus, the jury could have reasonably concluded that, not only should New Breed be vicariously liable for Calhoun's direct termination of Hines, but New Breed should also be liable for Malone's termination of Pete and Pearson. *See, e.g., Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 737 (6th Cir. 2004) (Clay, J., dissenting) (noting that if there is evidence from which a jury "could find that a supervisor not only acted as a conduit for a former's supervisor's discriminatory animus, but also knowingly based his termination decision on that animus, the employer [should be] unquestionably subject to vicarious liability"). Therefore, because sufficient evidence was presented to the jury to show that Calhoun's conduct resulted in tangible employment action for which New Breed should be vicariously liable, there is no reason to assess the applicability of the *Faragher/Ellerth* affirmative defense. Accordingly, we affirm the district court's judgment denying New Breed's motion for a new trial as to the harassment claim.

## C. New Breed is Not Entitled to Judgment as a Matter of Law or a New Trial as to the Punitive Damages Award.

Punitive damages are recoverable in a Title VII action when evidence is presented that an employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The appropriateness of a punitive damage award is to be assessed under the three-part inquiry set forth in *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999). First, a plaintiff must "demonstrate[] that the . . . [individuals perpetrating the discrimination acted] with malice or [ ] reckless indifference to[ward] the [plaintiff's] federally protected rights." *Id.* at 534 (quoting

§ 1981a(b)(1)). A plaintiff satisfies this prong by demonstrating that the individual in question acted "in the face of a perceived risk that its actions will violate federal law." *Id.* Second, the plaintiff demonstrates that the employer is liable by establishing that the discriminatory actor worked in a managerial capacity and acted within the scope of his employment. *Id.* at 539–41. Third, the defendant may avoid punitive-damages liability by showing that it engaged in good-faith efforts to comply with Title VII. *Id.* at 544–46; *see also Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 602–04 (6th Cir. 2007).

The jury verdict form permitted the jury to award punitive damages for sexual harassment and/or retaliation. New Breed contends that neither the retaliation claim nor the harassment claim provides support for the jury's award of punitive damages.[5] New Breed challenges the punitive damages award as to the retaliation claim under the first prong of *Kolstad*. Specifically, New Breed argues that the relevant decision makers could not have acted in the face of a perceived risk that their conduct violated federal law since they were not aware of any protected activity. New Breed does not challenge the punitive damages award as to the retaliation claim under *Kolstad*'s second prong. New Breed challenges the punitive damages award underlying the harassment claim under the second prong of *Kolstad*, arguing that punitive damages should not be awarded because sexual harassment was not in the scope of Calhoun's employment. Finally, New Breed contends that it should not be liable for punitive damages for Calhoun's conduct since it undertook good-faith efforts to prevent and correct sexual harassment and retaliation.

The district court upheld the jury's award of punitive damages. The district court concluded that there was evidence from which the jury could find that Calhoun acted in a managerial capacity and that, where sexual harassment results in tangible employment action, it can fall within the scope of employment and be imputed to the employer. The district court also concluded that there was evidence from which a jury could find that New Breed did not undertake good-faith efforts to prevent harassment and retaliation. The district court noted that

---

[5]New Breed also contends that the issue of punitive damages never should have gone to the jury. We have held that when an appellant has made "a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion." *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996). Therefore, we will confine our analysis to whether there is evidence sufficient to support the jury's punitive damages award.

the EEOC presented evidence that New Breed did not distribute its anti-harassment policies to temporary employees like Pete, Pearson, and Hines. The EEOC also presented evidence that Woods failed to investigate Pete's first call to the compliance hotline; instead, she merely asked Calhoun if the charges were true. As such, the district court found that it was appropriate to leave the jury's determination as to the punitive damages award undisturbed. For the following reasons, we agree with the district court's conclusions.

We find that the evidence is sufficient to show that Calhoun acted with malice or reckless indifference to federally protected rights in retaliating against the claimants. Evidence was presented to show that Calhoun subjected Hines, Pete, and Pearson to sexual harassment and then, either directly or indirectly, engineered the terminations of all three women and Partee after they all complained about his harassment. Thus, the jury had before it evidence from which it could reasonably conclude that Calhoun "engage[d] in conduct that carrie[d] with it a *perceived risk* that [his] actions [would] violate federal law." *See Harbert-Yeargin, Inc.*, 266 F.3d at 513 (citation omitted). We also reject New Breed's assertion that the inquiry is on the other decision makers' knowledge and conduct and not Calhoun's. The EEOC only had to show that the "individual[] perpetrating the discrimination [or, here, retaliation]" acted with malice or reckless disregard for federally protected rights. *See Parker*, 491 F.3d at 602. We find that the EEOC satisfied this burden based on Calhoun's conduct. Thus, the jury's punitive damages award as to the retaliation claim is satisfied as to the first prong of *Kolstad,* the only prong under which it is challenged.

New Breed challenges the punitive damages award as to the harassment claim only under *Kolstad*'s second prong. To demonstrate that the employer should be liable for punitive damages under this prong of *Kolstad*, the plaintiff must show that the discriminatory actor worked in a managerial capacity and acted within the scope of his employment. Indeed, "even intentional torts are within the scope of an agent's employment if the conduct is 'the kind [the employee] is employed to perform,' 'occurs substantially within the authorized time and space limits,' and 'is actuated, at least in part, by a purpose to serve the' employer." *Kolstad*, 527 U.S. at 543 (citations omitted). The employer's liability for such conduct, however, is explicitly limited by the caveat that "in the punitive damages context, an employer may not be vicariously liable for

the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" *Id.* at 545.

We find that the claimants have demonstrated that Calhoun's sexually harassing conduct meets the first two requirements of *Kolstad*'s second prong. New Breed employed Calhoun to manage and supervise the department in which Pete, Pearson, and Hines worked. Calhoun took advantage of his managerial role and used it as a means to supervise women in a sexually harassing way. Whether Calhoun's harassing conduct was "actuated, at least in part, by a purpose to serve" the employer, the third requirement of *Kolstad*'s second prong, is less clear. However, it is not at all difficult to conclude that his retaliatory conduct toward them was thus actuated. And because on appeal, New Breed has not challenged under *Kolstad*'s second prong the award of punitive damages for retaliation, we hold that the evidence of sexual harassment and/or retaliation is sufficient under *Kolstad*'s second prong.

Regarding the third *Kolstad* prong, we reject New Breed's contention that it is entitled to a new trial because it made good-faith efforts to prevent sexual harassment and retaliation. In assessing whether an employer engaged in good-faith efforts to comply with Title VII, we focus "both on whether the defendant employer had a written sexual harassment policy and whether the employer effectively publicized and enforced its policy." *Parker*, 491 F.3d at 603. The evidence showed that, although 80% of New Breed's workers at the Avaya facility were temporary employees, New Breed only distributed its anti-harassment and anti-discrimination policies to permanent employees. A jury could have reasonably found that this was not "effective publication." Additionally, after Pete made the anonymous call to the compliance line to report the harassment, the only action New Breed took to investigate the claim was to interview Calhoun to inquire into whether the charges were true. Woods did post a response to the compliance line requesting additional witnesses. However, while waiting for the additional information, Woods made no effort to interview any of the women in Calhoun's department, only Calhoun himself. When Woods did finally conduct additional interviews, the witnesses interviewed did not include Pete, the now-identified caller, and Pearson, one of the witnesses Pete identified on the compliance hotline. *See generally* R. 263 at 21–29, Page ID# 6039–47. The jury could have found this to be insufficient investigative action to enforce New Breed's

anti-harassment policy. *See, e.g.*, *Parker*, 491 F.3d at 603 (finding that supervisor "was, at the very least, recklessly indifferent to [plaintiff's] plight" when, *inter alia*, he merely spoke to the alleged harasser and took no further disciplinary action after the harasser's denial of any wrongdoing). Additionally, the fact that Pete, Pearson, and Partee were all terminated during Woods' investigation could also have led the jury to reject New Breed's assertion that it engaged in good-faith efforts to prevent retaliation. Thus, the evidence of New Breed's good-faith compliance with Title VII was not such that a jury could not reasonably find in the EEOC's favor. *See, e.g., Fischer v. United Parcel Serv., Inc.*, 390 F. App'x 465, 475 (6th Cir. 2010) (citation omitted).

Accordingly, we affirm the district court's denial of judgment as a matter of law and a new trial as to punitive damages.

**D.   New Breed is Not entitled to a New Trial Based on the Punitive Damages and Retaliation Jury Instructions.**

This court reviews a district court's jury instructions for an abuse of discretion. *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). The court assesses "whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009). Erroneous jury instructions only require reversal if they are confusing, misleading, and prejudicial. *Id.* An erroneous jury instruction should not be reversed where the error is harmless. *Id.*

1. *Punitive Damages Instructions*

New Breed first alleges that the punitive damages instructions were erroneous because they only captured the first two elements of the *Kolstad* test. Specifically, the instructions only informed the jury that the EEOC had to demonstrate: 1) that Calhoun acted with knowledge that his actions would violate federal law and 2) that New Breed is liable because Calhoun acted in a managerial position and within the scope of his employment. R. 225 at 47, Page ID# 4238. The district court did not instruct the jury that, under *Kolstad*, New Breed could avoid liability by showing that it engaged in good-faith efforts to comply with Title VII.

No. 13-6250                    *EEOC v. New Breed Logistics*                    Page 21

When New Breed raised this omission in its motion for a new trial, the district court concluded that New Breed waived this objection by not raising it at the charge conference. Relevantly, at the charge conference, New Breed only requested substitution of the word "employer" for "person" and the word "defendant" for "individual or individuals perpetrating the discrimination." R. 265 at 9, Page ID# 6219. New Breed made no mention of the absence of the *Kolstad* affirmative defense. To avoid the consequences of this waiver, New Breed contends that the fact that it submitted a proposed instruction including the *Kolstad* affirmative defense served to preserve its objection. In support of its position, New Breed states that, during a separate exchange, unrelated to the punitive damages instruction, the district court stated:

> I'm going to consider at this point any additional request is—I'm assuming that you're going to maintain that the other version, other than the one that I adopt, that you're preserving your right to still object to that. So, you don't have to state that each time.

R. 267-1 at 12, Page ID# 6826. There is no indication that the district court's statement was intended to insulate New Breed from making any substantive objections to the jury instructions for the remainder of the charge conference. Notably, on the occasion when the district court made this statement, the district court was addressing New Breed's objection to the EEOC's proposed amendment to the district court's burden-of-proof instruction. *Id.* at 10–11, Page ID# 6824–25. New Breed did not acquiesce in the district court's proposed instruction and the district court chose to adopt the EEOC's version. *Id.* at 11, Page ID# 6825. Thus, if put into context, the district court's instruction that New Breed need not restate an objection appeared to only apply when New Breed refused to acquiesce in the instruction adopted by the district court.

Furthermore, as noted above, New Breed did in fact object to the language of the punitive damages instructions—though not to the absence of the good-faith affirmative-defense language. Thus, one can strongly infer that New Breed did not interpret the district court's statement to mean that New Breed did not have to raise each of its objections during the charge conference. Therefore, the record reflects that New Breed did acquiesce to the punitive damages instructions.

New Breeds contends that, even if waiver applies, it is entitled to a new trial because the failure to include the good-faith affirmative-defense language constitutes plain error. Fed. R. Civ. P. 51(d)(2). Where a party fails to preserve its objection to jury instructions, we review the

instructions for plain error. *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 749 (6th Cir. 1996) (citation omitted). Plain error is defined as an "obvious and prejudicial error that requires action by the reviewing court in the interests of justice." *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999) (internal quotations and citation omitted). Admittedly, the jury instructions only referred to the first two prongs of the *Kolstad* test. R. 225 at 47, Page ID# 4238. New Breed did not, however, even argue in its closing that it made good-faith efforts to comply with Title VII. Alleging "prejudicial" error based on an affirmative defense not argued to the jury does not provide a basis for a Rule 51 plain-error reversal. *See, e.g., Lee v. Metr. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 452 (6th Cir. 2011).

### 2. *Retaliation Instructions*

New Breed challenges the retaliation instructions on three grounds: 1) the instructions failed to require but-for causation; 2) the instructions permitted the jury to find causation based on temporal proximity alone; and 3) the instructions stated that complaints to a harassing supervisor constitute protected activity and are sufficient to impute knowledge to the employer.

#### a. *Causation*

We will address grounds one and two together since they both address causation. New Breed first contends that the retaliation instructions were erroneous because the district court informed the jury that, in order to find New Breed liable for retaliation, the EEOC only had to show "that there was a causal connection between the claimant's protected activity and the adverse employment action." New Breed contends that this instruction required something less than but-for causation under *Nassar*. We disagree. The district court's retaliation instruction further informed the jury that: "To recover on its retaliation claims against the defendant, the plaintiff . . . must establish that [the claimants] were subjected to adverse employment actions by the defendant because of their internal complaints about alleged sex discrimination." R. 265 at 121, Page ID# 6331. The phrase "because of" denotes a but-for causation relationship. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Thus, although the Supreme Court had not yet decided *Nassar*, the retaliation instruction nonetheless articulated a but-for causation standard.

New Breed also contends that the retaliation instructions were erroneous because they informed the jury that it could find causation based on temporal proximity alone. New Breed reiterates its argument that temporal proximity alone is no longer sufficient under *Nassar*. Even assuming that this is the case, the instant jury instructions were not erroneous. The retaliation instructions informed the jury that "[c]lose timing between the claimant's protected activity and an adverse action against the clamant *may* provide the causal connection needed to make out a prima facie case of retaliation." R. 265 at 121, Page ID# 6331 (emphasis added). The instructions then went on to state: "However, you should be mindful that the fact that an adverse employment action occurred close in time to a protected activity does not always mean that one caused the other." *Id.* Following this statement, the instructions made clear that the EEOC could only establish its retaliation claim if it showed that the claimants were subjected to adverse employment actions "because of" their protected activity. *Id.* As just noted, the "because of" language embodies a but-for causation standard. Therefore, the jury instructions did not mislead or confuse the jury into thinking that it only had to find close temporal proximity between the protected activity and the adverse employment actions to find retaliation.

### b. Protected Activity/Knowledge

New Breed contends that the district court erred in instructing the jury as to the protected activity and employer knowledge prongs of the *prima facie* case. New Breed first asserts that the district court abused its discretion in instructing the jury that complaints to a harassing supervisor constitute protected activity. Because we have already affirmed the district court's conclusion in this regard, we will move to New Breed's challenge to the employer-knowledge instruction.

New Breed next argues that the district court erroneously informed the jury that "[a]n employer is deemed to have notice of harassment reported to *any* supervisor or department head who has been authorized or is reasonably believed by a complaining employee to have been authorized to receive and respond to or forward such complaints to management." R. 265 at 120–21, Page ID# 6330–31 (emphasis added). New Breed contends that this instruction is inconsistent with the requirement that the relevant decision maker must have knowledge of the protected activity.

No. 13-6250              *EEOC v. New Breed Logistics*                Page 24

We find that the district court did not abuse its discretion in instructing the jury on the issue of employer knowledge. New Breed's objection is unavailing as to Hines. Calhoun knew of Hines's protected conduct because she communicated her complaints about the harassment directly to him before he terminated her employment. New Breed's objection is similarly unavailing as to Pete, Pearson, and Partee. As noted previously, New Breed's liability for Pete's, Pearson's, and Partee's terminations is premised on a theory a cat's paw liability—that the relevant decision makers were conduits of Calhoun's retaliatory animus. *See Madden*, 549 F.3d at 678; *Roberts*, 283 F. App'x at 333. To prevail on this theory, the EEOC only had to show that the retaliatory animus of the biased supervisor influenced the decision maker. *Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 586 (6th Cir. 2014). Therefore, the retaliation instructions did not have to instruct the jury that the decision makers had to possess knowledge of the protected activity in order to find that the adverse employment actions were occasioned by Calhoun's retaliatory animus. Accordingly, the district court's retaliation instructions were not an abuse of discretion under the circumstances of this case.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 13-6250

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
              Plaintiff - Appellee,

    v.

NEW BREED LOGISTICS,
              Defendant - Appellant.

> **FILED**
> *Apr 22, 2015*
> DEBORAH S. HUNT, Clerk

Before: COLE, Chief Judge; KEITH and BATCHELDER, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district
court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk